# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-01178-SCT

*GERALD DONALD*

*v.*

*AMOCO PRODUCTION CO., ATLANTIC RICHFIELD COMPANY, BASS ENTERPRISES PRODUCTION CO., CHAMPLIN PETROLEUM COMPANY, CHEVRON CORPORATION, CHEVRON U.S.A., INC., COHO RESOURCES, INC., CONOCO, INC., CONQUEST EXPLORATION CO., EXXON CORPORATION, FINA OIL AND CHEMICAL COMPANY, FOUR STAR OIL & GAS CO., HUSEMAN OIL & ROYALTY, INC., INEXCO OIL COMPANY, MOON-HINES-TIGRETT OPERATING CO., INC., MOBIL OIL EXPLORATION & PRODUCING SOUTHEAST, INC., MURPHY OIL USA, INC., ORYX ENERGY COMPANY, OXY USA, INC., PHILLIPS PETROLEUM CO., PLACID OIL COMPANY, SHELL WESTERN E & P, INC., TENNECO OIL COMPANY, TEXACO, INC., UNION OIL COMPANY OF CALIFORNIA, VINTAGE PETROLEUM, INC., AND BANKPLUS*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/09/97 |
| TRIAL JUDGE: | HON. LARRY EUGENE ROBERTS |
| COURT FROM WHICH APPEALED: | WAYNE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN W. BOLING |
| | STUART H. SMITH |
| | JAMES R. COX |
| | MICHAEL G. STAG |
| ATTORNEYS FOR APPELLEES: | JEFFERY P. REYNOLDS |
| | THOMAS L. KIRKLAND, JR. |
| | WILLIAM T. WILKINS |
| | C. GLEN BUSH |
| | THOMAS R. HUDSON |
| NATURE OF THE CASE: | CIVIL - TORTS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART -3/25/1999 |
| MOTION FOR REHEARING FILED: | 4/8/99 |
| MANDATE ISSUED: | 5/27/99 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

### Statement of the Facts

¶1. On August 16, 1991, Gerald Donald ("Donald") bought a 20 acre parcel (the "property") in Wayne County, Mississippi, for the appraised value. He acquired title to the property by quitclaim deed from the Bank of Waynesboro (now "BankPlus") which had seized the property at foreclosure. The former owners, the Davis Brothers, were in the business of providing oil well maintenance services to various oil companies. In his Complaint, Donald alleges that Davis Brothers transported the oil field waste to the property and disposed of it there. He discovered the waste in 1995.

### Procedural History

¶2. On May 17, 1996, Donald filed his complaint in the Circuit Court of Hinds County, Mississippi. Donald named BankPlus ("BankPlus") as a defendant claiming negligent misrepresentation on the condition of the property. Donald also named several oil companies (hereafter "Oil Defendants"; collectively with BankPlus as the "Defendants") who contracted with Davis Brothers alleging seven causes of action including negligence, nuisance, trespass to land, breach of contract, waste, strict liability, and outrageous conduct.

¶3. On June 18, 1996, the Defendants filed a Notice of Removal in the U.S. District Court, Southern District of Mississippi, Jackson Division. Donald then filed an Amended Complaint in state and federal courts on June 19, 1996. On July 17, 1996, Donald filed a Motion for Remand. On March 31, 1997, the U.S. District Court remanded the case to state court.

¶4. On April 7, 1997, Defendants filed a Motion for Change of Venue, requesting that venue be transferred to Wayne County, predicating said motion the local action doctrine as codified in Mississippi Code Ann. § 11-11-3 (Supp. 1998) and the doctrine of *forum non conveniens*. On April 17, 1997, Donald again amended his complaint naming additional defendants and removing the claim for trespass to land. On April 18, 1997, Hinds County Circuit Court Judge Breland Hilburn held a hearing to consider the change of venue motion. On May 13, 1997, Judge Hilburn ordered the transfer of the case to the Circuit Court of Wayne County, Mississippi, where the subject property is located.

¶5. On May 28, 1997, Donald filed a Motion to Reconsider the Venue Transfer in the Circuit Court of Wayne County, because the record had already been transferred there. On July 9, 1992, Wayne County Circuit Judge Larry Eugene Roberts held a hearing at which the court denied the motion and set a date to hear argument on the Defendants' Motions to Dismiss. On August 22, 1997, a hearing was held to consider the Defendants' Motions to Dismiss. On September 3, 1997, the Circuit Court issued a Memorandum Opinion granting the Motions to Dismiss under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure. The Final Judgment with Prejudice was signed on September 9, 1997.

¶6. Aggrieved, Donald now appeals to this Court and raises the following contentions:

**I. THE LOWER COURT ERRED WHEN IT DISMISSED THE AMENDED COMPLAINT BECAUSE A CAUSE OF ACTION DOES NOT ACCRUE UNTIL A PLAINTIFF DISCOVERS OR SHOULD HAVE DISCOVERED THE DAMAGES.**

**II. THE LOWER COURT ERRED WHEN IT DISMISSED BASED UPON THE PRIOR TRESPASS DOCTRINE BECAUSE IT IS INAPPLICABLE TO THE CAUSES OF ACTION STATED.**

**III. THE LOWER COURT ERRED IN DISMISSING THE CASE BECAUSE THE DEFENDANTS CREATED A NUISANCE BY FAILING TO PROPERLY DISPOSE OF THE WASTE PRODUCED IN THEIR OPERATIONS.**

**IV. THE LOWER COURT ERRED IN DISMISSING THE CLAIM FOR STRICT LIABILITY FOR CONDUCTING AN ABNORMALLY DANGEROUS ACTIVITY.**

**V. THE DEFENDANTS COMMITTED STATUTORY WASTE.**

**VI. THE LOWER COURT ERRED WHEN IT HELD DONALD TO BE TOO REMOTE FROM THE OIL COMPANIES' NEGLIGENCE IN BREACHING THEIR DUTY TO PROTECT OTHERS FROM THE HAZARDOUS WASTE PRODUCED.**

**VII. THE LOWER COURT ERRED IN DISMISSING THE BREACH OF CONTRACT CLAIM.**

**VIII. THE LOWER COURT ERRED IN DISMISSING OUTRAGEOUS CONDUCT CAUSE OF ACTION.**

**IX. THE LOWER COURT ERRED IN DISMISSING NEGLIGENT MISREPRESENTATION CLAIM AGAINST BANKPLUS.**

**X. THE TRANSFER OF VENUE TO WAYNE COUNTY FROM HINDS COUNTY WAS IMPROPER.**

## STANDARD OF REVIEW

¶7. A motion to dismiss under Miss.R.Civ.P. 12(b)(6) raises an issue of law. *Tucker v. Hinds County*, 558 So.2d 869, 872 (Miss. 1990); *Lester Eng. Co. v. Richland Water and Sewer Dist.*, 504 So.2d 1185, 1187 (Miss. 1987). This Court conducts *de novo* review on questions of law. *Mississippi Transp. Comm'n v. Fires*, 693 So.2d 917, 920 (Miss. 1997); *UHS-Qualicare, Inc. v. Gulf Coast Community Hosp., Inc.*, 525 So.2d 746, 754 (Miss. 1987).

¶8. When considering a motion to dismiss, the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim. *Butler v. Board of Supervisors*, 659 So.2d 578, 581 (Miss. 1995); *Overstreet v. Merlos*, 570 So.2d 1196, 1197 (Miss. 1990).

## LEGAL ANALYSIS

**I. THE LOWER COURT ERRED WHEN IT DISMISSED THE AMENDED COMPLAINT BECAUSE A CAUSE OF ACTION DOES NOT ACCRUE UNTIL A PLAINTIFF DISCOVERS OR SHOULD HAVE DISCOVERED THE DAMAGES.**

¶9. The lower court concluded "the complaint shall be dismissed as time-barred by the applicable statute of limitations," Miss. Code Ann. § 15-1-49, because he purchased the property on August 16, 1991, and filed his complaint on May 17, 1996. Despite filing his complaint almost five years after acquiring the property, Donald asserts this ruling to be in error for failure to apply the discovery exception. He claims that this Court has applied the discovery exception previously to preserve a cause of action where damages are "undiscoverable." Alternatively, he argues that federal law preempts state law to furnish a discovery rule.

## A. The State Discovery Exception Applies to Claims for Property Damages.

¶10. Section 15-1-49 states:

> (1) All actions for which no other period of limitation is prescribed shall be commenced within **three (3) years** next after the cause of such action accrued, and not after.

> (2) In actions for which no other period of limitation is prescribed and **which involve latent injury or disease**, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

> (3) The provisions of subsection (2) of this section shall apply to all pending and subsequently filed actions.

Miss. Code Ann. § 15-1-49 (1995)(emphasis added). Donald asserts that the discovery exception has been interpreted by this Court to preserve any undiscovered claim. In this case, the contamination caused by the Defendants is invisible and therefore "inherently undiscoverable."

¶11. As authority for his contentions, Donald cites several of this Court's cases. A discovery exception has been applied in legal malpractice cases; *See Smith v. Sneed*, 638 So.2d 1252 (Miss. 1994) (statute of limitations in legal malpractice begins to run on date client learns or should have learned of lawyer's negligence); in defamation cases; *Staheli v. Smith*, 548 So.2d 1299 (Miss.1989) (discovery rule applies to time of accrual of defamation action under Miss. Code Ann. § 15-1-35); in bodily injury cases; *Williams v. Kilgore*, 618 So.2d 51 (Miss.1992); (discovery rule applied to medical malpractice actions involving latent injuries); and in worker's compensation cases; *Benoit Elevator Co. v. Mitchell*, 485 So.2d 1068 (Miss.1986) (application of discovery rule to Miss. Code Ann. § 71-3-35(1) for worker's compensation benefits for latent injuries).

¶12. Specifically, Donald asserts that the discovery exception should apply, because the presence of radioactive waste was detectable only through the use of a survey meter and the waste was buried in pits. This waste includes radioactive material produced by oil and gas exploration which was not apparent nor discovered prior to 1995. He looks to the theory behind why the Legislature and this Court first adopted such exceptions. In holding that the discovery exception applies to medical malpractice actions, this Court stated, "If the statute is ambiguous, we place upon it a construction which favors preservation of the plaintiff's cause of action." *Williams*, 618 So.2d at 55. It is well established that the statute of limitations does not run against one who has neither actual nor constructive notice of the facts that would entitle him to bring an action. *Id*. Furthermore, the Legislature adopted the discovery rule because it is illogical to bar an action before its existence is known. *Owens-Illinois, Inc. v. Edwards*, 573 So.2d 704, 708 (Miss. 1990). Likewise, Donald argues it is illogical to bar an inherently undiscovered claim for property damage.

¶13. In contrast, the Defendants argue a cause of action accrues and the statute begins to run on the day of

the wrongful act or no later than the date an injury occurs. *Williams*, 618 So.2d at 54. Under Donald's allegations, the wrongful act of waste disposal on the property occurred no later than the last disposal by the Davis Brothers. Thus, since Donald did not own the property when the "wrongful act" occurred, he has no claim for property contamination that pre-dated his purchase. A new cause of action does not and should not accrue every time the property is transferred. The Defendants' argument in this regard misses the point of the discovery exception. The issue is whether the discovery exception should apply under the facts as alleged by Donald, i.e. he "discovered" property contamination unknown to the Davis Brothers after his purchase and the running of the three- year statute of limitations.

¶14. Defendants next argue more responsively that Donald's allegations are inconsistent with this Court's limited application of a discovery exception, because Donald has not alleged that he could not have discovered with reasonable diligence the alleged contamination prior to or at the time he purchased the property. Defendants direct this Court's attention to a federal district case applying Texas law to somewhat similar facts. *Jones v. Texaco, Inc.*, 945 F.Supp. 1037 (S.D.Tex. 1996). There, the district court held that the discovery rule was inapplicable, because the existence of the pits and the presence of oil sediment and other wastes on the plaintiff's property were not "inherently undiscoverable." *Id*. at 1044.

¶15. *Jones* appears persuasive until one recognizes that the facts are not as similar as the Defendants would like. The *Jones* court said:

> Here, this goal [of requiring the timely assertion of claims while the evidence is fresh in the minds of the parties and witnesses] can best be effectuated by finding the plaintiffs' action to be time-barred. Any witnesses with knowledge concerning the deposit of hazardous wastes in the pits between 1904 and 1969 would likely be dead, retired, or of unknown whereabouts. Even if located and alive, a witness's memory of events that occurred at a minimum twenty-seven years ago would be distorted by the passage of time and could not be considered "fresh." Relevant documents also would likely have been destroyed over the course of the last ninety-two years. Therefore, the events at issue in this case are not just stale, they are rancid. Under these circumstances, applying the discovery rule to preclude the running of limitations is not warranted. [FN1]
>
> FN1. Even if the discovery rule applied, the plaintiffs' causes of action would be time-barred. The record reflects that Jones had actual notice of the contamination of the property by 1991 or 1992 and that General Truck was aware of the contamination by September 1993. The other plaintiffs had constructive notice of the contamination by virtue of the reference to the pits containing oil sediment and other wastes in the deed records.

*Id*. at 1044 (citation omitted). Here, Donald missed the three year limitation period by less than two years which can hardly be said to be "stale." Further, all witnesses are most likely still alive and should still have fresh memories. Finally, Donald alleges he had no notice whatsoever about the contamination to the property.

¶16. Donald argues that there is no evidence that the Davis Brothers, as former owners, knew they were handling radioactive materials. This Court has said that the statute of limitations commences upon discovery of an injury, and discovery is an issue of fact to be decided by a jury when there is a genuine dispute. *Schiro v. American Tobacco Co.*, 611 So.2d 962 (Miss. 1992) (Schiro, a smoker, filed suit following a diagnosis of cancer). The damage is not readily apparent to ordinary, prudent person, because the presence of radioactive waste is detectable only through the use of a survey meter. Finally, Donald's Amended

Complaint states that the Oil Defendants failed to warn anyone about the radioactive materials produced by their wells, and therefore, no one knew the true nature of what was being disposed.

¶17. The Defendants argue that even if a discovery exception applies Donald's claim fails because the presence of the waste on the property was not latent. Thus, the parties are in dispute over whether the waste was readily apparent or inherently undiscoverable. As mentioned above, the *Schiro* Court held that genuine disputes as to the ability to discover a latent injury are questions of fact to be decided by a jury. 611 So.2d at 962.

¶18. In refusing to apply the discovery exception, the lower court stated, as follows:

> [T]he state of Mississippi does not recognize a discovery rule for an action seeking recovery for injury to property. . . . The allegations all concern damage to property. The Mississippi Supreme Court has not chosen to carve out a discovery rule for property damage claims. This court is bound to apply the law as it is today. . . .

However, this Court has applied the discovery exception where the plaintiff will be precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question. *Staheli*, 548 So.2d at 1303. Or, the discovery exception may be applied when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act. *Smith*, 638 So.2d at 1257. Donald is a layman who realistically could not be expected to perceive the secret injury to the subject property until it was readily apparent as traceable radioactive waste by use of a survey meter.

¶19. Recognizing Donald's allegations as true and with this logic in mind, it only seems equitable that the discovery exception should apply in the unique facts of the instant case. To hold otherwise "would not only undermine the purposes for which statutes of limitations exist, but would also engender disrespect for our civil justice system." *Edwards*, 573 So.2d at 708-09. To time bar Donald's claims would put undue burden and cost on subsequent purchasers of real property in the form of phase I environmental reports, which are both costly and time-consuming. Therefore, we conclude that the lower court erred in failing to apply the discovery exception.

### B. Even if the State Discovery Exception Does Not Apply, Federal Law Preempts the State Statute of Limitations.

¶20. Alternatively, Donald argues that federal law preempts state law to provide a discovery exception. Our decision in sub-issue A above renders discussion of this alternative argument moot.

## II. THE LOWER COURT ERRED WHEN IT DISMISSED BASED UPON THE PRIOR TRESPASS DOCTRINE BECAUSE IT IS INAPPLICABLE TO THE CAUSES OF ACTION STATED.

¶21. Despite trespass to land being removed as a cause of action in the Amended Complaint, the lower court held "any alleged cause of action for trespass or diminution in value did not pass with the land to the Plaintiff, and the Plaintiff may not recover for such a trespass." Donald contends that this ground for a Rule 12(b)6 dismissal was error.

¶22. The Defendants argue that not only did the original Complaint contain an allegation of trespass to land, but the entirety of Donald's claims stem from a former trespass claim. They assert that Donald's Amended

Complaint is "an obvious ploy" and his remaining allegations are essentially allegations of trespass. They cite ***Keppner v. Gulf Shores, Inc.***, 462 So.2d 719, 725 (Miss. 1985)(defining "trespass" as an offense or infringement to property of another), and ***City of Jackson v. Filtrol Corp.***, 624 F.2d 1384, 1389 (5th Cir. 1980)(where the Fifth Circuit said Mississippi allows a plaintiff damaged by a physical invasion to its land to recover upon a simple showing that the defendant was responsible whether it be labeled nuisance or trespass or strict liability). In essence, the Defendants argue that all of the alleged wrongful acts and omissions occurred before Donald acquired the property. Thus, under the prior trespass doctrine, any cause of action for the condition of the property would not have passed when he purchased it.[1]

¶23. "Under Rule 15 it is wholly irrelevant that a proposed amendment changes the cause of action or the theory of the case, or that it states a claim arising out of a transaction different from that originally sued on or that it caused a change in parties." Miss.R.Civ.P. 15- Comment (1998); *See **International Ladies Garment Workers Union v. Donnelly Garment Co.***, 121 F.2d 561, 563 (8th Cir. 1941); *contra*, ***Bank of Forest v. Capital Nat. Bank***, 176 Miss. 163, 169 So. 193 (1936) (*citing* V. Griffith, Mississippi Chancery Practice § 389 (2d ed. 1950)). In his Amended Complaint, Donald dropped his trespass to land claim but kept his nuisance and strict liability claims.

¶24. However, Defendants correctly assert that under the facts of the instant case labels are unimportant. Applying Mississippi law, the Fifth Circuit has held:

> Our examination of Mississippi law indicates that . . . nuisance, trespass, and strict liability are not separate theories of liability. Mississippi allows a plaintiff damaged by a physical invasion to its land to recover upon a simple showing that the defendant was responsible for the physical invasion.

***Filtrol,*** 624 F.2d at 1389 (favorably cited by this Court in ***Phillips v. Davis Timber Co.***, 468 So.2d 72 (Miss. 1985), and ***Shutes v. Platte Chem. Co.***, 564 So.2d 1382 (Miss. 1990)). Thus, the lower court did not err in addressing the cause of action of trespass to land although it had been deleted from the Amended Complaint. However, that being said, the proper application of prior trespass doctrine must still be addressed.

¶25. In ***Filtrol***, the prior trespass doctrine was also raised as a defense. 624 F.2d at 1391. There, Filtrol Corp. argued that when the City acquired the right-of-way at issue the alleged contamination was already there. The Fifth Circuit then examined the rationale for the prior trespass doctrine and determined, as follows:

> The rationale for the prior trespass doctrine is that a purchaser of land to which permanent damage has been done by trespass or nuisance pays less for the land because of that damage. The purchaser therefore cannot recover for the diminution in the value of the property caused by the nuisance or trespass. 58 Am.Jur.2d Nuisances § 105 (1971). (The Mississippi Supreme Court has frequently looked to American Jurisprudence Second for general principles of nuisance law. See e. g., ***Vicksburg Chemical Co. v. Thornell***, 355 So.2d 299 (Miss. 1978); ***Blue v. Charles F. Hayes & Associates, Inc.***[sic]) Here, the city is not suing for a diminution in the value of the right-of-way it purchased from Ridgeway; it is suing for special damages caused by Filtrol's invasion of the property it purchased.
>
> . . .Assuming that the Ridgeway land became permanently contaminated with acid before the City bought it, the City cannot recover from Filtrol the decrease in the value of the land caused by the

contamination. The City can nonetheless recover the special damages it has suffered because of the contamination. This application of the prior trespass doctrine accords with the doctrine's purpose. The City cannot recover for the diminution in the value of the land because the price it paid, theoretically at least, for the land reflected the damage to the land by the contamination. The City can recover special damages caused by the contamination because the price it paid for the land did not reflect those damages.[FN6]

FN6. The application of the prior trespass doctrine would be especially tenuous in this case when no one knew of the permanent contamination to the subsurface soil on the Ridgeway land at the time the City purchased that land. Since no one knew of the contamination, the contamination could not have influenced the price the City paid for its easement.

*Filtrol*, 624 F.2d at 1391. Prophetically, in footnote 6, the Fifth Circuit described the instant case. If the same rationale is applied here, then Donald's purchase price did not reflect the contamination's effect on the property's value, and application of the prior trespass doctrine would rest on a "tenuous" base. Thus, this Court finds that the prior trespass doctrine should not have been applied here. The Wayne County Circuit Court judgment of dismissal pursuant to Rule 12(b)(6) is reversed.

### III. THE LOWER COURT ERRED IN DISMISSING THE CASE BECAUSE THE DEFENDANTS CREATED A NUISANCE BY FAILING TO PROPERLY DISPOSE OF THE WASTE PRODUCED IN THEIR OPERATIONS.

### and

### IV. THE LOWER COURT ERRED IN DISMISSING THE CLAIM FOR STRICT LIABILITY FOR CONDUCTING AN ABNORMALLY DANGEROUS ACTIVITY.

#### A. Nuisance

¶26. The lower court held that Donald could "not assert a nuisance claim for alleged injuries caused by a prior owners' use of the property" and accordingly dismissed. The lower court accepted the Defendants' view as premised upon *Berry v. Armstrong Rubber Co.*, 780 F.Supp. 1097 (S.D.Miss. 1991), *aff'd* 989 F.2d 822 (5th Cir. 1993). In *Berry*, the district court held, "the common law of nuisance does not protect a landowner from interference or harm resulting from a previous use of his property by a prior landowner." 780 F.Supp at 1103. Further, the district court held that a private nuisance is narrowly restricted to the invasion of interests in the use and enjoyment of land, because it is a tort and the remedy lies exclusively with the individual whose rights have been disturbed. *Id*.(*citing Philadelphia Electric Co. v. Hercules, Inc.*, 762 F.2d 303 (3rd Cir. 1985), *cert. denied*, 474 U.S. 980 (1985)(prior landowner and producer of waste not liable to successors in title)). Thus, the claim should be dismissed, because it only alleges damage to the subject property by the Davis Brothers while the Davis Brothers owned it.

¶27. Donald argues that reliance on *Berry* and *Philadelphia Electric* is misplaced because both those cases applied the doctrine of caveat emptor between a vendor and a vendee of land and found no cause of action sounding in private nuisance for conditions existing on the land transferred. Here, that would only be true between Donald and BankPlus, and not between Donald and the oil companies, because there is no vendor-vendee relationship. Rather, the Amended Complaint alleges that the Oil Defendants created a nuisance by conducting oil production which produced hazardous waste as a by-product.

¶28. Moreover, the Oil Defendants furthered that nuisance by failing to take necessary and reasonable steps to ensure the waste was properly disposed. Donald alleges that the Oil Defendants had a non-delegable duty to ensure the waste was properly disposed. Donald cites ***Gordon v. National R.R. Passenger Corp***., 1997 WL 298320 (Del.Ch. March 19,1997), for this contention. ***Gordon*** involved nuisance and trespass actions arising out of the dumping of hazardous materials. The defendants argued that they did not owe a duty to the plaintiffs, because the defendants' contractors had deposited the "fill" upon the property. The court however held that the defendants owed a "non-delegable duty" to the plaintiffs which required them to exercise care to ensure that the contaminated fill would not cause a trespass or nuisance. Donald argues that similarly the Oil Defendants had a non-delegable duty to discard the hazardous waste from their wells and breached that duty by hiring incompetent and incapable contractors. Further, the Oil Defendants were in the best position to know Davis Brothers was incapable of disposing of the waste safely.

¶29. Oil Defendants distinguish ***Gordon*** by pointing out that the plaintiff had specifically contracted with the defendants to deposit "clean fill" on the property. ***Gordon*** at *2. Whereas, Donald had no interest in the property when Davis Brothers dumped the waste on the property. Therefore, the Oil Defendants assert that the lower court held correctly. As will be explained below, this Court does not agree.

### B. Strict Liability

¶30. The lower court found the claim of strict liability for an ultrahazardous activity was unfounded, because Mississippi has only recognized this type of liability in the disposal and use of dynamite and other explosives, and even if oil well waste disposal were considered ultrahazardous, the Oil Defendants did not engage in such activity. The lower court correctly held that strict liability for ultrahazardous activity has only been found by this Court in cases involving explosives. *See **Teledyne Exploration Co. v. Dickerson***, 253 So.2d 817, 818 (Miss. 1971); ***Central Exploration Co. v. Gray***, 70 So.2d 33, 36 (Miss. 1954).

¶31. As an issue of first impression, Donald asserts that the transportation and disposal of radioactive oil waste should be considered as an ultrahazardous activity. Donald points to the Restatement (Second) of Torts §§ 519-520, which lists two factors, as follows:

> a.One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattel of another resulting from the activity although he has exercised the utmost care to prevent the harm.

> b.This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

Restatement (Second) of Torts §§ 519-520 (1965). Donald cites several cases from foreign jurisdictions as persuasive authority. ***Madison v. Vintage Petroleum, Inc.***, 114 F.3d 514, 516 (5th Cir. 1997)(Fifth Circuit held that a Mississippi state court could find that the production and disposal of NORM waste supported strict liability); ***Updike v. Browning-Ferris, Inc.***, 808 F.Supp. 538 (W.D.La. 1992)(storage of hazardous waste imposes strict liability on contractors and principals who hire contractors); ***T & E Industries, Inc., v. Safety Light Corp.***, 587 A.2d 1249 (1991)(radium and its disposal is an abnormally dangerous activity within Restatement Second of Torts); and ***Bennett v. Mallinckrodt, Inc.***, 698 S.W.2d 854 (Mo. 1985)(strict liability should be applied to claims based on radiation damage).

¶32. Oil Defendants counter that as a matter of law oil and gas explorations are not abnormally dangerous activities. ***Bolivar v. R & H Oil and Gas Co.***, 789 F.Supp. 1374, 1383 (S.D.Miss. 1991). "Mississippi authorities have uniformly required proof of negligence against the operator of an oil or gas well as a prerequisite to the imposition of liability for damages." ***Id***. at 1383. Oil Defendants also direct this Court's attention to ***Ewell v. Petro Processors of Louisiana, Inc.***, 364 So.2d 604, 607 (La.Ct.App.1978), where the dumping of toxic waste in industrial disposal well was not considered abnormally dangerous.

¶33. The nuisance and strict liability claims, sub-issues A and B, can both be addressed without having to decide the issue of first impression regarding ultrahazardous activities. As noted above, applying Mississippi law, the Fifth Circuit held, as follows:

> [N]uisance, trespass, and strict liability are not separate theories of liability.

> *Mississippi allows a plaintiff damaged by a physical invasion to its land to recover upon a simple showing that the defendant was responsible for the physical invasion.* Here, the City offered sufficient evidence from which the jury could reasonably have concluded that Filtrol was responsible for a physical invasion of the City's land.

> ....

> *The label that a court attaches to the theory under which it holds a defendant liable does not appear to be of critical importance*. Mississippi clearly allows a plaintiff to recover damages to land caused by physical invasion of the plaintiff's land by an agency put in motion by the defendant, even if the defendant has not been negligent.

***Filtrol***, 624 F.2d at 1389-90[2] (emphasis added). Accepting Donald's allegations as true, he has shown a physical invasion to the property and should recover if he can show the Oil Defendants were responsible for the physical invasion. Thus, regardless of whether Donald categorizes his claim of physical invasion as nuisance or strict liability or trespass, he has met the burden as expressed in ***Filtrol***.

¶34. Finally, this Court has already favorably cited ***Filtrol*** on two occasions. ***Phillips v. Davis Timber Co.***, 468 So.2d 72, 78 (Miss. 1985); ***Shutes v. Platte Chem. Co.***, 564 So.2d 1382, 1385 (Miss. 1990). In ***Phillips***, this Court was faced with the question of whether the plaintiff had proven a case of nuisance where the chancellor found that the defendant's plant had polluted Phillips' lake. ***Id***. at 78. Citing ***Filtrol***, this Court said "[w]e . . . are of the opinion that a plaintiff may recover damage by a physical invasion of his property on a simple showing that the defendant was responsible for the physical invasion." ***Id.*** Donald has alleged such a physical invasion for which the Oil Defendants were responsible. Accepting Donald's allegations as true, this Court follows ***Phillips*** and reverses the lower court's judgment of dismissal under Rule 12(b)(6).

### C. Nuisance Per Se

¶35. The lower court held that there was no liability for the Oil Defendants in regards to nuisance per se since the Davis Brothers dumped waste on their own property. Donald alleged nuisance per se in the Amended Complaint, citing Miss. Code Ann. § 17-17-17, which states:

> The formation of unauthorized dumps is hereby declared to be a public nuisance per se, menacing public health and unlawful, and *any person who forms an unauthorized dump* shall be punished as

provided in section 17-17-29 of this chapter. Existing dumps shall be eliminated by removal or on-site burial.

Miss. Code Ann. § 17-17-17 (1995) (emphasis added). Donald complains that the lower court's ruling was in error, because oil companies have been held liable for nuisance per se for the damages their operations caused to third party property owners.

¶36. This is another first impression issue in Mississippi. Donald cites ***Branch v. Western Petroleum, Inc.***, in which a property owner sued adjoining owners for pollution of plaintiffs' culinary water wells caused by percolation of oil well formation waters which defendant had ponded on its property. 657 P.2d 267 (Utah 1982). The Utah statutes dealt with percolating waters and the pollution of them. U.C.A.1953 §§ 73-14-1, 73-14-5 (Repealed)[(3)]. The Utah Supreme Court held:

> When the conditions giving rise to a nuisance are also a violation of a statutory prohibition, those conditions constitute a nuisance per se, and the issue of the reasonableness of the defendant's conduct and the weighing of the relative interests of the plaintiff and defendant is precluded because the Legislature has, in effect, already struck the balance in favor of the innocent party.

***Branch*** at 276 .

¶37. The Oil Defendants attack Donald's argument in two ways. First, they argue that neither Section 17-17-17 nor Section 17-17-29 creates or even allows for a private cause of action. Second, assuming there is private cause of action, they argue that his complaint does not allege that they created a dump, but that the Davis Brothers created a dump on their own land.

¶38. Sections 17-17-1 *et seq.* is the "Solid Wastes Disposal Law of 1974." Miss. Code Ann. §§ 17-17-1 to -503 (1995 & Supp. 1998). The law is primarily enforced by the Mississippi Department of Environmental Quality. Miss. Code Ann. § 17-17-2 (1995). This Court has not addressed Section 17-17-17, but has recently addressed subsection 17-17-29(4) in ***MidSouth Rail Corp. v. Citizens Bank & Trust Co.***, 697 So.2d 451 (Miss. 1997). In ***MidSouth Rail***, this Court was faced with the question of whether a bank as a lender of the polluter should be liable for creating the necessity for a clean-up. ***Id***. at 459. This Court held:

> [I]f a lender can be considered under this statute, so can any other person or company whose actions make the business possible. . . .[Thus] the trial court's broad interpretation of Miss. Code Ann. § 17-17-29(4), holding Citizens Bank liable for "creating" an environmental hazard, violates the requirement that [penal] statutes be construed narrowly. ***Mississippi Insurance Comm'n v. Savery***, 204 So.2d 278 (Miss.1967). . . .

***Id***. at 459-60.

¶39. Therefore, without addressing whether a private cause of action exists[(4)], this Court reverses the lower court's judgment of dismissal under Rule 12(b)(6). The Oil Defendants were more critically involved in the unauthorized dump's creation than the lender bank in ***MidSouth Rail***. Although the Oil Defendants are probably not the ones who in fact physically formed the dump, discovery could reveal that they knew of the illegal dump or encouraged the Davis Brothers to illegally dump to such an extent as to implicate Section 17-17-17.

**V. THE LOWER COURT ERRED WHEN IT HELD DONALD TO BE TOO REMOTE FROM THE OIL COMPANIES' NEGLIGENCE IN BREACHING THEIR DUTY TO PROTECT OTHERS FROM THE HAZARDOUS WASTE PRODUCED.**

**and**

**VI. THE DEFENDANTS COMMITTED STATUTORY WASTE.**

¶40. In the Amended Complaint, Donald alleged both negligence and negligence per se. The lower court focused on the negligence claim and found that "[a]ny alleged negligent acts on the part of the Oil Company Defendants are too remote to the Plaintiff to give rise to a duty owed to the Plaintiff." Confusingly, Donald chose to combine his negligence per se claim with another claim, statutory waste. The lower court did not address the negligence per se claim based on alleged violations of statutes and oil and gas board regulations. Instead, the lower court examined "waste" under the definition, "any substantial injury done to the inheritance by one having a limited estate, during the continuance of his estate." ***Dodds v. Sixteenth Section Dev. Corp.***, 232 Miss. 524, 99 So.2d 897, 901 (1958)(*quoting* ***Moss Point Lumber Co. v. Board of Supervisors***, 89 Miss. 448, 42 So. 290, 300 (1906)). In so doing, the lower court easily found that Donald had failed to state a claim upon which relief may be granted.

### A. Negligence

¶41. As a matter of law, the lower court held that Donald had not demonstrated that the Defendants owed him a duty which if breached would give rise to a cause of action. The lower court went to state:

> The foreseeability of the actions of Davis Brothers is the problem with the Plaintiff's alleged claim of negligence. Was it reasonably foreseeable that Davis Brothers would have dumped the oil field waste on its own property? Was it reasonably foreseeable that the Plaintiff would have bought the property form BankPlus in the foreclosure sale? Any alleged negligent acts on the part of the Oil Company Defendants are too remote to the Plaintiff to give rise to a duty owed to the Plaintiff.

Donald first contends that the lower court improperly addressed foreseeability which is an issue of fact for the jury. In contrast, the Oil Defendants contend that the lower court properly determined an issue of law, that they owed Donald no duty.

¶42. To succeed on a claim for negligence, the plaintiff must prove duty, breach, causation and injury. ***Meena v. Wilburn***, 603 So.2d 866, 869 (Miss. 1992). The plaintiff must show "(1) the existence of a duty 'to conform to a specific standard of conduct for the protection of others against the unreasonable risk of injury', (2) a breach of that duty, (3) causal relationship between the breach and alleged injury, and (4) injury or damages." ***Id***. at 870 n.5 (*citing and quoting* ***Burnham v. Tabb***, 508 So.2d 1072, 1074 (Miss. 1987)). Duty and breach of duty are essential to finding negligence and must be demonstrated first. ***Strantz v. Pinion***, 652 So.2d 738, 742 (Miss. 1995).

¶43. While duty and causation both involve foreseeability, duty is an issue of law, and causation is generally a matter for the jury. Juries are not instructed in, nor do they engage in, consideration of the policy matters and the precedent which define the concept of duty. W. Page Keeton, Prosser and Keeton on Torts § 37, at 236 (5th ed. 1984). This Court has held that the existence vel non of a duty of care is a question of law to be decided by the Court. ***Foster v. Bass***, 575 So.2d 967, 972-73 (Miss. 1990). Therefore, the lower court properly decided a matter of law.

¶44. Next, assuming the lower court correctly decided a matter of law, Donald argues that the Oil Defendants did owe him a duty of care, because they generated the waste and put it into the control of the contractor without any warning of its radioactive properties. Donald asserts that a duty of reasonable care to remove a cause of danger exists when a cause of danger is reasonably foreseeable. ***Read v. Southern Pine Elec. Power Ass'n.***, 515 So.2d 916, 919 (Miss. 1987). This standard applies whether the injury is to persons or property. *Id*. In *Read*, the plaintiff sued the power company after a faulty transformer caused several electrical problems which damaged to her property. *Id*. at 918. This Court held that the power company had a duty, because the "cause of danger [was] reasonably foreseeable caused by and known" to it. *Id*. at 919.

¶45. Donald asserts that the Oil Defendants had a similar duty here, because they alone knew of the hazardous materials in the waste and failed to warn others. It is foreseeable that a failure to warn could endanger others. Further, the Oil Defendants had a duty to ensure the proper disposal of their hazardous waste, because it was foreseeable that otherwise illegal dumping could result in danger to the public. Finally, Donald asserts that they had a duty to train properly the contractors on proper disposal of the hazardous waste so as to not endanger the general public.

¶46. The Oil Defendants focus on the absence of a nexus between Donald and themselves. They argue that they owe no duty to Donald based on the subject property, because "Mississippi law clearly does not impose a duty on those in the oil company defendants' position to ensure, for the benefit of the purchaser, that an independent contractor and current owner of the property which **might** later be sold, handle that land -- in which the defendant **has no interest** -- with good husbandry." In short, they argue that they owed no duty to prevent Davis Brothers from contaminating Davis Brothers' own land.

¶47. The lower court agreed with the Oil Defendants and held, "[a]ny alleged negligent acts on the part of the Oil Company Defendants are too remote to the Plaintiff to give rise to a duty owed . . ." As such, Donald asserts that the lower court in effect held Davis Brothers' negligence as an intervening, unforeseeable risk that cut off any liability on the part of the Oil Defendants. Donald argues that any company which transfers toxic waste to any contractor for disposal without warning them of the hazards incident to disposal is aware of the risks. *See **Canton Broiler Farms, Inc. v. Warren***, 214 So.2d 671, 676-77 (Miss. 1968) (if the occurrence of the intervening cause might reasonably have been anticipated, such intervening cause will not interrupt the connection between the original cause and the injury). Further, in absence of a warning or at least instructions on proper disposal, the waste was virtually assured to be improperly disposed. *See **Howard Bros. of Phoenix City, Inc. v. Penley***, 492 So.2d 965, 968 (Miss. 1986) (it is no defense that the defendants may not have anticipated exactly what transpired).

¶48. The standard of care applicable in cases of alleged negligent conduct is whether the party charged with negligence acted as a reasonable and prudent person would have under the same or similar circumstances. ***Knapp v. Stanford***, 392 So.2d 196, 199 (Miss.1980); ***Danner v. Mid-State Paving Co.***, 252 Miss. 776 173 So.2d 608, 615 (1965). If a defendant's conduct is reasonable in light of the "foreseeable risks," there is no negligence and no liability. ***Reaves v. Wiggs***, 192 So.2d 401, 403 (Miss. 1966). In addition, a defendant must only take reasonable measures to remove or protect against "foreseeable hazards" that he knows about or should know about in the exercise of due care. ***Millers of Jackson, Inc. v. Newell***, 341 So.2d 101, 103 (Miss.1976). A defendant is obligated solely to safeguard against reasonable probabilities and is not charged with foreseeing all occurrences, even though such occurrences are within the range of

possibility. *Pargas of Taylorsville, Inc. v. Craft*, 249 So.2d 403, 407-08 (Miss.1971).

¶49. The lower court's judgment of dismissal under Rule 12(b)(6) is reversed because Donald has stated a claim for negligence. "Duty" is properly determined by the court as a matter of law and issues of public policy are considered. The Oil Defendants have a duty to ensure the safe disposal of their waste. Without such a duty, oil companies and others could hire anyone to remove it and claim their liability has ended. We would all bear the burden of such a rule. In this case, whether the Oil Defendants' liability was foreseeable and should continue, despite any negligence by Davis Brothers, is an issue of causation which should be subject to discovery and further proceedings in the lower court.

### B. Negligence Per Se

¶50. As stated above, the lower court failed to even address the negligence per se cause of action despite the allegation in the Amended Complaint that the Oil Defendants violated oil and gas regulations. Donald asserts that negligence per se is a valid cause of action where property damage results from violations of oil and gas regulations. *See Madison v. Vintage Petroleum, Inc.*, 114 F.3d 514, 516-17 (5th Cir. 1997) (applying Mississippi law, Fifth Circuit held that a state court could conceivably find a negligence per se recovery). Furthermore, Mississippi law follows the Restatement (Second) of Torts § 286. *Thomas v. McDonald*, 667 So.2d 594, 597 (Miss. 1995)(In order for doctrine of negligence per se to apply, plaintiff must show that he is member of class that statute was designed to protect and that harm he suffered was type of harm that statute was intended to prevent). In the Amended Complaint, Donald alleges that the Oil Defendants violated oil and gas regulations which he asserts are designed to protect him from the kind of harm he has suffered, i.e. property damage. Thus, he contends he has stated a claim for negligence per se.

¶51. Oil Defendants counter that Donald has not specifically enumerated the regulation violated or exhausted his administrative remedies. First, Donald does assert that the Oil Defendants violated Section 53-1-3(l)(ii) of the Oil and Gas Board statutes defining "waste," as follows:

> (ii) The inefficient storing of oil; and the locating, spacing, drilling, equipping, operating or producing of any oil or gas well or wells in a manner causing or tending to cause unnecessary or excessive surface loss or destruction of oil or gas.

Miss. Code Ann. § 53-1-3(l)(ii) (Supp. 1998). Donald further asserts that waste is unlawful under Section 53-3-3. Finally, he contends that the Oil Defendants violated Rule 45(III)(B) of the State Oil and Gas Board regulations, which reads, as follows:

> B. Crude oil, waste oil, oil sludge, oil-water emulsion, or oil-bearing mixtures of any kind, and all other liquid, gaseous, solid, radioactive, or other deleterious substances which may pollute or tend to pollute the air, soils, or any waters of the state shall be disposed of in such a manner as to prevent, eliminate or reduce waste by pollution to acceptable levels.

¶52. In general, a complainant must exhaust the administrative remedies available to him before resorting to the courts for resolution of his dispute. *State v. Beebe*, 687 So.2d 702, 704 (Miss. 1996); *NCAA v. Gillard*, 352 So.2d 1072, 1082-83 (Miss.1977); *Everitt v. Lovitt*, 192 So.2d 422, 426 (Miss.1966); *Davis v. Barr*, 250 Miss. 54, 157 So.2d 505 (1963). However, where no adequate administrative remedy is provided, the exhaustion doctrine is not applicable. *Mississippi Dep't of Envtl. Quality v. Weems*, 653 So.2d 266, 277 (Miss. 1995); *Campbell Sixty-Six Express, Inc., v. J & G Express, Inc.*,

244 Miss. 427, 440, 141 So.2d 720, 726 (1962).

¶53. Here, the State Oil and Gas Board (the "Board") has jurisdiction and authority over all persons and property necessary to enforce its regulations. Miss. Code Ann. § 53-1-17 (Supp. 1998). "Any interested person" has the right to have the Board call a hearing for the purpose of taking action in any matter within the Board's authority. Miss. Code Ann. § 53-1-29 (1990 & Supp. 1998). The Board can enjoin continuing violations and assess penalties for any violations. Miss. Code Ann. §§ 53-1-43, 47 (Supp. 1998). Furthermore, Section 53-1-47 reads, in pertinent part:

> (c) Any *person who aids or abets any other person* in the violation of any provision of Sections 53-1-1 through 53-1-47, inclusive, or Sections 53-3-1 through 53-3-21, inclusive, or any rule, regulation or order made thereunder, *shall be subject to the same penalties* as are prescribed herein for the violation by such other person.

> (d) In *determining the amount of the penalty* under subsection (a), (b) or (c) of this section, the board shall consider at a minimum the following factors:

> (i) The willfulness of the violation;

> (ii) *Any damage to water, land or other natural resources of the state or their users;*

> (iii) *Any cost of restoration and abatement*;

> (iv) *Any economic benefit to the violator as a result of noncompliance*;

> (v) The *seriousness of the violation*, including any harm to the environment and any harm to the health and safety of the public; and

> (vi) Any prior violation by such violator.

> (e) The board is authorized to utilize the provisions of Section 85-7-132 to enforce penalties provided by this section.

Miss. Code Ann. § 53-1-47(c), (d), & (e) (Supp. 1998).

¶54. Anyone assessed a penalty or enjoined by the Board has a right to appeal to the chancery courts. Miss. Code Ann. § 53-1-39 (1990 & Supp. 1998). However, the statutes and regulations do not provide for or prohibit private causes of action. Regardless, Donald could have and should have filed a written request for hearing with the Board as an "interested person." Miss. Code Ann. § 53-1-29 (1990 & Supp. 1998). Upon such request, the Board has thirty (30) days to take appropriate action. *Id*. Here, Donald did not give the Board a chance to take any action. Upon examination of Section 53-1-47, we conclude that the Board could have penalized the Davis Brothers and possibly the Oil Defendants and required them all to pay the costs of clean-up, restoration, etc. Therefore, the administrative remedy is adequate and should have been exhausted prior to filing a private suit. Thus, the negligence per se claim was properly dismissed, albeit for the wrong reasons.

## VII. THE LOWER COURT ERRED IN DISMISSING THE BREACH OF CONTRACT CLAIM.

¶55. The lower court dismissed Donald's breach of contract claim, because he failed to attach a written copy of the instrument to the pleading as required by Miss.R.Civ.P. 10(d). The lower court said that if no copy of agreement is attached "there is no way to determine if the plaintiff is the alleged third party beneficiary of the agreement . . ." The lower court based this determination upon this Court's holding in **Trammel v. State** that the right of a third party beneficiary to sue for breach of contract must spring from the contract. 622 So.2d 1257, 1260 (Miss. 1993).

¶56. Donald asserts that the lower court erred in this dismissal, because the claim is based on the probability that a contract existed between the Davis Brothers and the Oil Defendants, and without discovery, there is no way for him to know of the existence of any such contract. Thus, Donald contends that he could not comply with Rule 10(d), because the lower court dismissed his claim before he could determine if any contract did in fact exist.

¶57. Miss.R.Civ.P. Rule 10(d) provides:

> (d) <u>Copy Must Be Attached</u>. When any claim or defense is founded on an account or other written instrument, a copy thereof must be attached to or filed with the pleading unless sufficient justification for its omission is stated in the pleading.

In regards to Rule 10(d), this Court held that a rigid application is no longer necessary. **Bryant, Inc. v. Walters**, 493 So.2d 933, 938 (Miss.1986). Furthermore, this Court has said:

> While Rule 10(d) must obviously be given effect according to its tenor, such may be done by providing that a defendant must timely assert the rule else any claim founded thereon will be deemed waived Where a party perceives that his adversary has failed to conform to Rule 10(d), he may file a proper motion reasonably in advance of trial seeking compliance with the rule, failing which compliance he may be entitled to dismissal of the complaint without prejudice. Any other construction would render the rule's primary function as a trap for the unwary. Where, as here, the fact of the statements was alleged and where it is obvious that there was no surprise to Gilchrist, *it would be wholly inconsistent with the spirit and purpose of our rules to treat Rule 10(d) as an exclusionary rule. In view of the liberal provisions for discovery found in Rule 26-37, Miss.R.Civ.P. the attachment of exhibits to pleading is hardly as important as in former days*.

**Gilchrist Mach. Co., v. Ross**, 493 So.2d 1288, 1292 (Miss.1986) (emphasis added & footnotes omitted). In **Gilchrist**, this Court allowed Ross's claim despite his failure to comply with the rule, because Gilchrist had failed to assert the violation reasonably in advance of trial and thus waived its rights under the rule. **Id**. at 1292.

¶58. In 1991, this Court affirmed these previous decisions on Rule 10(d) and held that a lower court had committed reversible error in not allowing the plaintiff an opportunity to amend his pleadings to conform with the rule. **Edwards v. Beasley**, 577 So.2d 384, 386-87 (Miss. 1991). Therefore, this Court reverses the judgment of dismissal of Donald's claim for breach of contract to allow him the opportunity to discover if any contracts did in fact exist, and if so, whether such contracts establish him as an intended third-party beneficiary. If such a contract does not exist, the lower court can easily dispose of this claim on summary judgment. Without discovery, it cannot be said that beyond a doubt Donald can prove no set of facts in support of his claim which would entitle him to relief.

## VIII. THE LOWER COURT ERRED IN DISMISSING OUTRAGEOUS CONDUCT CAUSE OF ACTION.

¶59. The lower court held that Donald's claim of outrageous conduct failed to state a claim for relief because neither this Court nor the Legislature has ever recognized such a tort in Mississippi. Oil Defendants further contend that no such separate tort exists in Mississippi. However, Donald urges this Court to adopt such a tort based upon the egregious recklessness and intentional acts alleged here. As persuasive authority, Donald cites the Supreme Court of Kentucky, which has recognized the tort of outrageous conduct, in accord with Section 46 of the Restatement (Second) of Torts, in an asbestos case. *Capital Holding Corp. v. Bailey*, 873 S.W.2d 187, 195 (Ky. 1994).

¶60. The Restatement (Second) of Torts § 46 (1966) reads, as follows:

> § 46. Outrageous Conduct Causing Severe Emotional Distress
>
> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distr ess to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

The Supreme Court of Kentucky adopted this tort in 1984. *Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984). In its reasoning, the court said:

> The basis of the cause of action is intentional interference with the plaintiff's rights causing *emotional distress*, with or without personal injury in the traditional sense. If there has been physical injury with pain to the body or mind, it is incidental to the emotional distress rather than essential to the cause of action as is the case in an action for personal injury. The plaintiff may have a cause of action for emotional distress from the intentional and unlawful interference with her rights, regardless of whether she suffers any bodily injury from such interference.

*Id*. at 249. In *Craft*, the plaintiffs had been harassed by a former employer without physical injury. *Id*. at 248. A primary purpose of the tort then seems to be a way to avoid the normal requirement of some physical injury when asserting a claim for intentional infliction of severe emotional distress.

¶61. In fact, this Court has already accepted the tort of outrageous conduct by another name. *Sears, Roebuck & Co. v. Devers*, 405 So.2d 898, 902 (Miss. 1981). There, this Court said:

> Where there is something about *the defendant's conduct which evokes outrage* or revulsion, done intentionally-or even unintentionally, yet the results being reasonably foreseeable--Courts can in certain circumstances comfortably assess damages for *mental and emotional stress*, even though there has been no physical injury. . . .

*Id*. In *Devers*, a store-patron was detained for a short time when a tag which had inadvertently been left on a sweater she had purchased set off an alarm while she was leaving the store. This Court held she could bring at action for negligence, and damages are recoverable for mental pain and anguish by a willful, wanton, malicious or intentional wrong even though no bodily injury was sustained. *Id*.

¶62. Recently, this Court reaffirmed the *Devers* holding in *Peoples Bank & Trust Co. v. Cermack*, 658 So.2d 1352 (Miss. 1995). In *Cermack*, this Court held a jury instruction was erroneous, because it failed

to instruct the jury that it had to find that Peoples Bank's conduct was wanton or willful such that it would evoke outrage or revulsion in accord with *Devers*. *Id*. at 1365.

¶63. However, this Court has never allowed or affirmed a claim of emotional distress based on a fear of contracting a disease or illness in the future, however reasonable. *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So.2d 648, 658 (Miss. 1995). In *Ferguson*, some landowners filed action against a paper mill asserting infliction of emotional distress and nuisance claims. This Court reversed and rendered a jury award because the landowners could not recover emotional distress damages for fear of cancer from alleged dioxin in river released by paper mill, absent evidence of exposure and absent medical evidence of possible or probable future illness, and the evidence did not support finding that paper mill's conduct was malicious, intentional, willful, wanton, grossly careless, indifferent or reckless for purposes of claim for infliction of emotional distress. *Id*.

¶64. Thus, in Mississippi, this Court has recognized outrageous conduct as a tort more commonly known as the intentional infliction of emotional distress. Donald alleges that the Oil Defendants willfully and wantonly caused the property to become contaminated. Therefrom, Donald alleges he suffered personal injury, anxiety, distress, fear, aggravation, and inconvenience. Based on these allegations being accepted as true, the lower court erred in dismissing this cause of action for failure to state a claim, and the judgment of dismissal is reversed.

## IX. THE LOWER COURT ERRED IN DISMISSING THE NEGLIGENT MISREPRESENTATION CLAIM AGAINST BANKPLUS.

¶65. The lower court dismissed the negligent misrepresentation claim against BankPlus, because Donald had ample opportunity to inspect the property prior to inspection and BankPlus made no representations whatsoever through its quitclaim to Donald. The lower court based its opinion on *Stonecipher v. Kornhaus*, where this Court stated the general rule that "a vendor of real estate is not liable to the purchaser in possession, . . . which is caused by a dangerous condition on the premises, whether natural or artificial, which existed when the purchaser took possession." 623 So.2d 955, 962 (Miss. 1993).

¶66. The requirements for a cause of action for negligent misrepresentation are:

> 1. A misrepresentation or omission of fact;
>
> 2) That the representation or omission is material or significant;
>
> 3) The failure to exercise reasonable care on the part of the defendant;
>
> 4) Reasonable reliance on the misrepresentation or omission; and
>
> 5) Damages as a direst result of such reasonable reliance.

*Id*. at 964. Donald asserts that the Amended Complaint alleges these five elements.

¶67. First, Donald contends that BankPlus made an implied misrepresentation of material fact. As BankPlus notes, this allegation is developed more fully in the brief than the complaint. Second, BankPlus failed to exercise reasonable care by not properly inspecting the property when it knew the previous owner was in the oil field waste disposal business. Donald relied on these representations when he decided to purchase

the property. His damages were the result, because he would not have knowingly purchased property contaminated with hazardous waste.

¶68. In *MidSouth Rail Corp. v. Citizens Bank & Trust Co.*, 697 So.2d 451, 459-60 (Miss. 1997), this Court held that Miss. Code Ann. Section 17-17-29(4)[5] did not impose liability on lenders as "any person creating, or responsible for creating, . . . immediate necessity for remedial or clean-up action." *MidSouth Rail* at 460 (*quoting* Miss. Code Ann. § 17-17-29(4) (1995)). In *MidSouth Rail*, Citizens Bank filed a declaratory judgment action to determine liability to MidSouth Rail for environmental clean-up costs arising from sulphur processing by an ultimately bankrupt sulphur processor, who had leased the land from MidSouth Rail and obtained a loan from Citizens Bank. *Id*. at 453-54. The trial court held Citizen's Bank liable for "clearly enabling the operator of the facility to continue its business." *Id*. at 459.

¶69. This Court reversed declining to extend liability to Citizens Bank for public policy reasons, as follows:

> [E]xtending the scope of the statute would negatively impact lenders and their customers across the state. By placing liability on lenders for "enabling" business operations, banks would be subject to liability for environmental contamination to which they did not cause or contribute. . . . This liability would serve to discourage business development and to apply the consequences of one party's act to a more financially sound party with no fault. An innocent lender could become subject to liability in virtually any type of loan. [T]he . . . only reasonable conclusions are an increase in the cost of loan transactions, a decrease in business capital due to stricter loan guidelines, and a corresponding decrease in business development.

*MidSouth Rail* at 459.

¶70. Under the same rationale and with public policy in mind, this Court extends the holding of *MidSouth Rail* to prevent lender liability where the innocent lender has foreclosed on a parcel of real estate with a latent environmental defect and then sold by quitclaim deed that parcel to a third party at a foreclosure sale. Therefore, this Court affirms the lower court's dismissal of this claim.

## X. THE TRANSFER OF VENUE TO WAYNE COUNTY FROM HINDS COUNTY WAS IMPROPER.

¶71. Donald originally filed his Complaint and later his Amended Complaint in the Circuit Court of Hinds County. The Defendants moved for transfer of venue to the county where the property is located based primarily on the local action doctrine and secondarily on the doctrine of *forum non conveniens*. The Circuit Court of Hinds County agreed and issued an order transferring venue to Wayne County. Donald's Motion for Reconsideration was denied by the Circuit Court of Wayne County. Donald now contends that the transfer of venue was in error because neither the local action doctrine nor *forum non conveniens* supports the transfer.

¶72. The standard of review for a transfer of venue is, as follows:

> An application for a change of venue is addressed to the discretion of the trial judge, and his ruling thereon will not be disturbed on appeal unless it clearly appears that there has been an abuse of discretion or that the discretion has not been justly and properly exercised under the circumstances of the case.

*Estate of Jones v. Quinn*, 716 So.2d 624, 626 (Miss. 1998)(*quoting* *Beech v. Leaf River Prods., Inc.*, 691 So.2d 448 (Miss. 1997)(*quoting* **Mississippi State Highway Comm'n v. Rogers**, 240 Miss. 529, 128 So.2d 353, 358 (1961)).

### A. Local Action Doctrine

¶73. In Mississippi, the local action doctrine is codified in Section 11-11-3 which states:

> Civil actions of which the circuit court has original jurisdiction shall be commenced in the county in which the defendant or any of them may be found or in the county where the cause of action may occur or accrue and, if the defendant is a domestic corporation, in the county in which said corporation is domiciled or in the county where the cause of action may occur or accrue, except where otherwise provided, and *except actions of trespass on land*, ejectment and actions for the statutory penalty for cutting and boxing trees and firing woods and actions for the actual value of trees cut which shall be brought in the county where the land or some part thereof is situated. If a civil action is brought in an improper county, such action may be transferred to the proper county pursuant to section 11-11-17.

Miss. Code Ann. § 11-11-3 (Supp. 1998) (emphasis added).

¶74. In explaining the local action doctrine under the old venue statute, this Court said that "[t]hey must be brought in the county in which the land lies. All other actions must be brought with reference to the person of the defendant." **City of Jackson v. Wallace**, 189 Miss. 252, 196 So. 223 (1940)(McGowen, J. dissenting)(*quoting* **Oliver v. Loye**, 59 Miss. 320 (1881). Furthermore, "The statute alone governs. The only local actions with us are ejectment and trespass on land. They must be commenced in the county in which the land lies." **Id**. The effect of the local action doctrine on venue is "jurisdictional," i.e. subject matter jurisdiction lies only where the property is located and objections to venue cannot be waived. **Belk v. State Dep't of Pub. Welfare**, 473 So.2d 447, 449 (Miss. 1985); **Leake County Coop. v. Dependents of Barrett**, 226 So.2d 608, 615 (Miss. 1969).

¶75. Obviously, under the local action doctrine, Donald's original Complaint as filed would have been required to be brought in Wayne County, because it contained a claim for trespass to land. However, Donald amended his Complaint and dropped the cause of action for trespass to land. Despite dropping the trespass to land claim, the Hinds County Circuit Court transferred the case to Wayne County after oral arguments at a hearing on the Defendants' motion.

¶76. The Defendants argue here, as they did at the hearing, that Donald's allegations are primarily those of trespass to land whether he titles it trespass or nuisance. The Defendants rely upon *Filtrol*, in which the Fifth Circuit said, "Our examination of Mississippi law indicates that on the facts of this case nuisance, trespass, and strict liability are not separate theories of liability. Mississippi allows a plaintiff damaged by a physical invasion to its land to recover upon a simple showing that the defendant was responsible for the physical invasion." 624 F.2d 1384, 1389 (5th Cir. 1980). Furthermore, "[t]he label that a court attaches to the theory under which it holds a defendant liable does not appear to be of critical importance." *Id*. at 1390. Similarly, the Defendants contend that Donald's claims all revolve around an alleged physical invasion to land, and are thus in the nature of trespass whether labeled as such or not.

¶77. On the other hand, Donald seeks to distinguish *Filtrol* on grounds that the Fifth Circuit was not faced

with the legal issue of venue, and never considered or interpreted Mississippi's statutes and rules governing venue. Moreover, in contrast to the Fifth Circuit's above-quoted determination of Mississippi law, the theory under which the plaintiff seeks to hold the defendant liable is of "critical importance" for purposes of venue and the local action doctrine.

¶78. In regards to the distinction between trespass and nuisance, this Court has said:

> There is a distinction between a nuisance and a trespass, although many things are sometimes called nuisances which are mere trespasses, and it has been said that *an action for a nuisance which violates a property right incident to the ownership of land is in the nature of one for trespass to realty*. The difference is that a nuisance consists of use of one's own property in such a manner as to cause injury to the property or other right or interest of another and generally results from the commission of an act beyond the limits of the property affected, while a trespass is a direct infringement of another's right of property. Thus, where there is no actual physicial [sic] invasion of the plaintiff's property, the cause of action is for nuisance rather than trespass.

***Blue v. Charles F. Hayes & Assocs., Inc***, 215 So.2d 426, 429 (Miss. 1968)(*quoting* 39 Am. Jur. Nuisances § 3 (1942)). Here, Donald alleges an actual physical invasion of the subject property, although he labels it a "nuisance" cause of action. Therefore, this action is "in the nature of one for trespass to realty" and is thus subject to the local action doctrine of Section 11-11-3. Hence, the Hinds County Circuit Court did not abuse its discretion in transferring the venue of this case to Wayne County where the property is located. Likewise, the Wayne County Circuit Court did not abuse its discretion in denying reconsideration of the venue transfer issue.

### B. Forum Non Conveniens

¶79. Because we hold that venue was properly transferred pursuant to the local action doctrine, we need not discuss *forum non conveniens* except to note that we recently held that the doctrine of *forum non conveniens* is inapplicable when the trial court is faced with a choice of venue between two Mississippi counties. ***Clark v. Luvel Dairy Prods., Inc.***, No. 96-IA-01284-SCT ¶29, 1998 WL 943650, *9 (Miss. Dec. 16, 1998).

## CONCLUSION

¶80. We reiterate that this case was neither determined on the merits by a jury, nor decided on a motion for summary judgment. Rather, the Wayne County Circuit Court dismissed Donald's complaint pursuant to Rule 12(b)(6) for failure to state a claim for which relief can be granted. Our conclusion is therefore based upon the assumption that Donald's allegations are true.

¶81. The lower court's determination that Donald's claims are time-barred pursuant to Section 15-1-49 should be reversed by application of the discovery exception. In this case, the discovery exception is applicable, because the plaintiff is precluded from discovering the harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question.

¶82. The lower court's application of the prior trespass doctrine was erroneous, because Donald's purchase price did not reflect the contamination's effect on the property's value. Thus, the prior trespass doctrine is not applicable here. Accepting Donald's allegations as true, we reverse the judgment of dismissal below.

¶83. "[A] plaintiff may recover damage by a physical invasion of his property on a simple showing that the defendant was responsible for the physical invasion." *Phillips v. Davis Timber Co.*, 468 So.2d 72, 78 (Miss. 1985). We follow *Phillips* and reverse the lower court's dismissal under Rule 12(b)(6) because Donald has alleged such a physical invasion that must be accepted as true, regardless of whether it is labeled "nuisance" or "strict liability."

¶84. Without addressing whether a private cause of action exists, we reverse the lower court as to the nuisance per se issue. The Oil Defendants were more critically involved in the unauthorized dump's creation than the lender bank in *MidSouth Rail*. Although the Oil Defendants may not be the ones who in fact physically formed the dump, further discovery could reveal that they knew of the illegal dump or encouraged Davis Brothers to illegally dump to such an extent as to implicate Section 17-17-17.

¶85. The lower court's dismissal under Rule 12(b)(6) of the negligence claim is reversed. "Duty" is properly determined by the court as a matter of law and issues of public policy are considered. The Oil Defendants have a duty to ensure the safe disposal of their waste.

¶86. The negligence per se claim was properly dismissed, albeit for the wrong reasons. Donald could and should have filed a written request for hearing with the State Oil and Gas Board as an "interested person." Miss. Code Ann. § 53-1-29 (Supp. 1998). Upon such request, the Board has thirty (30) days to take appropriate action. *Id*. Here, Donald did not give the Board a chance to take any action. Under Section 53-1-47, the Board has the authority to penalize Davis Brothers and possibly the Oil Defendants and require them all to pay the costs of clean-up, restoration, etc. Therefore, the administrative remedy is adequate but was not exhausted.

¶87. In 1991, this Court affirmed previous decisions applying Miss. R. Civ. P. 10(d) and held that a lower court had committed reversible error in not allowing the plaintiff opportunity to amend his pleadings to conform with the rule. *Edwards v. Beasley*, 577 So.2d 384, 386-87 (Miss. 1991). Therefore, since Donald's claim was dismissed on a Rule 10(d) basis, this Court reverses the dismissal of breach of contract claim to allow him the opportunity to discover if any contracts did in fact exist, and if so, whether such contracts establish him as an intended third-party beneficiary.

¶88. This Court has recognized "outrageous conduct" as a tort more commonly known here as "the intentional infliction of emotional distress." Donald alleges that the Oil Defendants willfully and wantonly caused the property to become contaminated, and that he suffered personal injury, anxiety, distress, fear, aggravation, and inconvenience. The lower court therefore erred in dismissing this cause of action for failure to state a claim, and the dismissal is reversed.

¶89. As a matter of law, the lower court properly dismissed Donald's claim for negligent misrepresentation against BankPlus. This Court extends the holding of *MidSouth Rail* to prevent lender liability where the innocent lender has foreclosed on a parcel of real estate with an latent environmental defect and then sold that parcel to a third party at a foreclosure sale.

¶90. Donald alleges an actual physical invasion of the subject property, although he labels it a "nuisance" cause of action. Therefore, this action is in the nature of one for trespass to realty and thus subject to the local action doctrine of Section 11-11-3. Hence, the Hinds County Circuit Court did not abuse its discretion in transferring the venue of this case to Wayne County where the property is located, and the Wayne County Circuit Court did not abuse its discretion in denying reconsideration of the venue transfer

issue.

¶91. For these reasons, we affirm the order transferring this action from Hinds County to Wayne County and the order denying reconsideration of the venue transfer. We affirm in part and reverse in part the judgment of the Wayne County Circuit Court, and we remand this case for further proceedings consistent with this opinion.

¶92. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., AND WALLER, J., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MILLS, J. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**

### BANKS, JUSTICE, DISSENTING:

¶93. I cannot agree with the majority's decision to reverse the dismissal of this action because, in my view, the plaintiff has no cause of action. I respectfully dissent.

¶94. In my view, the "prior trespass" doctrine, even though there was in fact, no trespass at all, properly applied ends this lawsuit. The majority holds that the doctrine of prior trespass is inapplicable where the purchaser is seeking special damages as opposed to damages resulting from the diminution in the value of the property. In support of this holding the majority relies on *City of Jackson v. Filtrol*, 624 F.2d 1384 (5th Cir. 1980).

¶95. *Filtrol* involved the purchase of an easement across the property of Filtrol and in neighboring property for the purpose of constructing a sewage line. During construction of the line, the City became aware of the fact that the subsoil was affected by seepage from a holding pond maintained by Filtrol such that the ph level of the soil was reduced which in turn adversely affected the sewage line. The City sued Filtrol for the damage to its line to recover sums that it was required to expend in order to secure the line from the affected soil. In response to Filtrol's claim that the prior trespass doctrine controlled, the court held that, although the City plaintiff was not entitled to recover for the decrease in the value of its easement, the City could recover for special damages incurred.

¶96. The *Filtrol* court cited as support for this conclusion *City of Oxford v. Spears*, 228 Miss. 433, 87 So. 2d 914 (1956). *Spears*, however, deals with the damages recoverable by a property owner for an ongoing trespass, not a subsequent property owner's ability to recover for a prior trespass. Similarly, in *Filtrol*, while it is clear that there was evidence that the property in question had been affected by the seepage many years prior to the City's acquisition of the easement, it is not clear from the opinion of the court that there was not a continuous seepage, affecting the sewage line constructed on the easement.

¶97. In my view, the fact pattern in *Filtrol* is unique, and that case does not stand for the proposition that some "special damage" may support a claim made by a subsequent owner against a purported trespasser or other property user, which trespass or use was complete at the time of purchase. Nor is it clear to me, just

what "special damages" this plaintiff claims. Special damage is by definition damage other than damage to the property affected by the "trespass." *Spears*, 228 Miss. at 439, 87 So. 2d at 916.

¶98. Finally, with respect to *Filtrol*, the majority seems to take out of context the observation in that case that all that is needed to make out a case for trespass is a showing that the acts of one affected the land of another. The context of that statement was the issue raised by Filtrol: whether there was a requirement that there be an intentional act on the part of the trespasser. Surely, the *Filtrol* court did not mean that subsequent purchasers are entitled to a claim based upon any trespass.

¶99. In Mississippi trespass is defined as (1) an offense or infringement to (2) the property (3) of another. *Keppner v. Gulf Shores, Inc.*, 462 So. 2d 719, 725 (Miss. 1985). The prior trespass doctrine is based on the premise that the purchaser is in a better position to protect himself or herself by means of inspection, negotiation or through contractual provisions. *Rosenblatt v. Exxon Co.*, 642 A.2d 180, 188 (Md. Ct. App. 1994).

¶100. As a result, it has long been the law in Mississippi that a successor in interest to real property cannot recover for trespass which occurred prior to the transfer of title. *Henritzy v. Harrison County*, 180 Miss. 675, 178 So. 322, 326 (1938) ("The purchaser of land takes it without any right of action for former trespasses."); *Masonite Corp. v. Burnham*, 164 Miss. 840, 853, 146 So. 292, 293 (1933), *overruled on other grounds by Flight Line, Inc. v. Tanksley*, 608 So. 2d 1149 (Miss. 1992); *See Blodgett v. Seals*, 78 Miss. 522, 29 So. 852, 852 (1901) ("The sale of the land gave title to the land only, and not to any rights of action for former trespasses upon it."). In fact this is the rule in a majority of the jurisdictions. *See, e.g., Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 627 (M.D. Pa. 1997); *Lilly Industries, Inc. v. Health-Chem Corp.*, 974 F.Supp. 702, 708 (S.D. Ind. 1997); *Cross Oil Co. v. Phillips Petroleum Co.*, 944 F. Supp. 787, 792 (E.D. Mo. 1996); *55 Motor Ave. Co. v. Liberty Indus. Finishing Corp.*, 885 F. Supp. 410, 424 (E.D.N.Y. 1994); *Hanlin Group, Inc. v. International Minerals & Chemical Corp.*, 759 F. Supp. 925, 937 (D. Me. 1990); *Wellesley Hills Realty Trust v. Mobil Oil Corp.*, 747 F. Supp. 93, 98-99 (D. Mass. 1990); *Rosenblatt v. Exxon Co.*, 642 A.2d 180, 189-90 (Md. Ct. App. 1994).

¶101. It does not really matter that there are differing theories of recovery here. As the *Filtrol* court correctly observed, trespass, nuisance and strict liability are cut from the same cloth with respect to action based upon injuries to property and rights therein.

¶102. The majority holds that the doctrine of caveat emptor does not apply in this action because there is no vendor-vendee relationship between Donald and Amoco. It also adopts the *Filtrol* court's observation that the reasons underlying the prior trespass doctrine do not obtain where for some reason the defect in the property is latent.

¶103. To the latter, it is enough to observe that nothing in the record suggests that the fact that the property had been used to dump petroleum waste products was not visible to inspection. As for the former, the principles underlying the doctrine of caveat emptor are equally applicable to an action in which the purchaser seeks to recover for damages to real property from a third party who is not a vendor or a successor in interest to the real property. Just as the doctrine of prior trespass, the doctrine of caveat emptor is also based on the premise that the purchaser is in a better position to protect himself or herself by means of inspection, negotiation or through contractual provisions; and on the premise that the purchaser bears the risk of failing to take protective measures. *Philadelphia Electric Co. v. Hercules, Inc.*, 762

F.2d 303, 312, 314-15 (3d Cir.), *cert. denied*, 474 U.S. 980, 106 S. Ct. 384, 88 L. Ed.2d 337 (1985); ***Wilson Auto Enterprises, Inc. v. Mobil Oil Corp.***, 778 F. Supp. 101, 104-5 (D.R.I. 1991). It defies logic to say that a purchaser who fails to protect himself or herself cannot seek recovery against the vendor, but can pursue a third person who was not a party to the sale and who may have had the vendor's permission to use the property in a manner which had an adverse effect on its value.

¶104. This is merely another example of a successor in interest trying to assert a claim which belonged to the previous owner, and as such, is also precluded under the prior trespass doctrine as discussed *supra*.

¶105. This case is factually analogous to ***Berry v. Armstrong Rubber Co.***, 780 F.Supp. 1097 (S.D. Miss. 1991), *aff'd*, 989 F.2d 822 (5th Cir. 1993). The district court in ***Berry*** held that:

> The common law of nuisance does not protect a landowner from interference or harm resulting from a previous use of his property by a prior landowner. *See **Philadelphia Electric Co. v. Hercules, Inc.***, 762 F.2d 303 (3d Cir.), *cert. denied*, 474 U.S. 980, 106 S. Ct. 384, 88 L. Ed.2d 337 (1985) (prior owner and producer of wastes not liable to successors in title). Plaintiffs' claims involve a previous use of property, *and, furthermore, Armstrong was not a previous owner of the properties.* Accordingly, the Court grants summary judgment on Plaintiffs' nuisance claims.

780 F. Supp. at 1103 (emphasis added). In this case, the Oil Defendants were not prior property owners and, as stated in Donald's complaint, the dumping was done pursuant to contractual agreements between the Oil Defendants and the Davis brothers.

¶106. For the foregoing reasons, I would affirm the judgment of the lower court dismissing the action for a failure to state a claim.

**MILLS, J., JOINS THIS OPINION.**

1. A vendor's right of action, if any, for trespass or property damage does not pass to the purchaser with the transfer of property. ***Henritzy v. Harrison County***, 180 Miss. 675, 696, 178 So. 322, 326 (1938) (purchaser of land takes it without any right of action for prior trespasses); ***Masonite Corp. v. Burnham***, 164 Miss. 840,146 So. 292, 294 (Miss. 1933)(purchaser of land after a trespass cannot recover for the trespass).

2. The Fifth Circuit reached this determination after analyzing several Mississippi cases. ***Id***. at 1389-90; *See **King v. Vicksburg Ry & Light Co.***, 88 Miss. 456, 42 So.2d 204 (1906); ***Town of Fulton v. Mize***, 274 So.2d 129 (Miss. 1973); ***Blue v. Charles F. Hayes & Assocs., Inc.***, 215 So.2d 426 (Miss. 1968); and ***Love Petroleum Co. v. Jones***, 205 So.2d 274 (Miss. 1967).

3. In Utah, Chapter 14 of Title 73 was replaced by the Water Pollution Control Act, § 26-11-1 *et seq*. Section 26-11-8 of that act is similar to repealed § 73-14-5.

4. Nowhere in the statute is a private cause of action expressly granted. Miss. Code Ann. §§ 17-17-1 to -503 (1995 & Supp. 1998).

5. Miss. Code Ann. § 17-17-29(4) (1995) states in pertinent part:

> (4) Any person creating, or responsible for creating, through misadventure, happenstance, or

otherwise, an immediate necessity for remedial or clean-up action involving solid waste shall be liable for the cost of such remedial or clean-up action and the commission may recover the cost of the same by a civil action brought in the circuit court of the county in which venue may lie. This penalty may be recovered in lieu of or in addition to the penalties provided in subsection (1), (2) and/or (3) of this section.