515 So.2d 916 (1987)
Bobbie READ
v.
SOUTHERN PINE ELECTRIC POWER ASSOCIATION.
No. 57094.
Supreme Court of Mississippi.
November 12, 1987.
*918 William R. Ruffin, R.K. Houston, Bay Springs, for appellant.
J.W. Land, Bryan, Nelson, Allen, Schroeder & Randolph, Hattiesburg, John K. Keyes, Keyes & Rogers, Collins, for appellee.
En Banc.
SULLIVAN, Justice, for the Court:
Bobbie Read (Read) filed a complaint against Southern Pine Electric Power Association (SPEPA) for damages allegedly caused by a SPEPA transformer providing electricity to Read's residence. At the conclusion of trial in the Circuit Court of Jasper County, the jury returned a verdict for Read. Subsequently the trial court granted SPEPA's motion for judgment notwithstanding the verdict. From judgment for SPEPA, Read appeals. SPEPA cross-appeals the trial court's denial of its motion for attorney's fees incurred during certain discovery proceedings. We reverse on direct appeal, reverse on cross-appeal, and remand.
SPEPA was the supplier of electricity for a multi-county district. Included in SPEPA's service area was Jasper County, where Bobbie Read lived. In March of 1977, on a clear day, the wires leading from SPEPA's transformer to Read's house began "shooting out sparks" and "caught on fire." When Read reported the incident, SPEPA dispatched service man Joe Ricketson, who stripped the wires and put clamps on them.
After the transformer fire, Read began experiencing trouble with her electricity. Two (2) or three (3) light bulbs per day would burn out and have to be changed. The eyes on the electric stove burned out two (2) or three (3) times and had to be replaced each time. Numerous appliances burned out, including two (2) refrigerators, two (2) television sets, a dishwasher, a microwave oven, a stereo, two (2) typewriters, and two (2) sewing machines. The electric lights in the home would alternately grow very bright and then very dim. On one (1) occasion a light bulb exploded. Read experienced other similar problems, too numerous to recount here.
Read complained to SPEPA by telephone and by mail, apparently receiving little or no response. In April of 1980, SPEPA employee Jeff McCollum was at the Read house reading the meter when the sewing machine began, in Bobbie Read's words, "shooting fire." Read informed McCollum of the problem. McCollum "checked" the problem and then told Read, "You've got too much current coming in your house. It's a wonder your house hasn't burned down."
The next day SPEPA installed a new transformer. Read experienced few problems with her electricity once the transformer was replaced.
On January 27, 1982, Read filed a civil complaint in the Circuit Court of Jasper County. The complaint included three (3) separate counts, one based on negligence, one based on strict liability, and a third based on res ipsa loquitur.[1]
At the conclusion of the trial, Read did not submit an instruction on strict liability. Thus, the case went to the jury on a negligence *919 theory. Read requested, and the trial court gave, an instruction on res ipsa. After the trial court denied SPEPA's motion for a directed verdict, the jury found for Read and awarded her $16,278.45. Reducing the award by $3,000.00 to account for a settlement to Read from the manufacturer of the transformer, the trial court entered judgment in favor of Read for $13,278.45. Subsequently, SPEPA moved for a judgment notwithstanding the verdict, and the trial court granted that motion. From judgment for SPEPA, Read appeals, assigning one error.

I. DID THE TRIAL COURT ERR IN GRANTING SPEPA'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT?
The motion for j.n.o.v. challenges the legal sufficiency of the evidence, just as the motion for directed verdict does. Weems v. American Security Insurance Co., 450 So.2d 431 (Miss. 1984). In deciding a motion for j.n.o.v., the trial court must consider all the evidence, along with the reasonable inferences flowing therefrom, in the light most favorable to the non-moving party. If the evidence and inferences thus considered are such that reasonable jurors exercising impartial judgment might reach different conclusions, the motion should be denied. Baker Service Tools v. Buckley, 500 So.2d 970, 972 (Miss. 1986); Weems v. American Sec. Ins. Co., 450 So.2d 431, 435 (Miss. 1984); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975).
In light of this standard we consider Read's evidence to determine whether it was sufficient to support the verdict. To recover on a negligence theory, Read was required to prove 1) that SPEPA owed a duty to her, 2) that SPEPA breached that duty, 3) that she incurred damages, and 4) that SPEPA's breach was the proximate cause of those damages. Marshall v. The Clinic for Women, P.A., 490 So.2d 861 (Miss. 1986).
With regard to duty, Read alleged and SPEPA admitted that SPEPA was in the business of distributing electricity. As a power company, SPEPA, though not an absolute insurer against injury, was under the highest duty of care in distributing electricity. Upton v. Magnolia Electric Power Assoc., 511 So.2d 939 (Miss. 1987); City of Starkville v. Harrison, 418 So.2d 51 (Miss. 1982); Mississippi Power & Light Co. v. Shepard, 285 So.2d 725 (Miss. 1973). When a cause of danger is reasonably forseeable caused by and known to the power company, the company must exercise reasonable care to correct or remove the cause of danger. Shepard, 285 So.2d at 729. This standard of care applies whether the injury is to persons or to property. Mississippi Power Co. v. Luter, 336 So.2d 753, 756 (Miss. 1976).
In an effort to prove that SPEPA breached this duty, Read put on evidence indicating that excessive power from SPEPA's transformer was flowing into her residence. Most of this evidence was circumstantial. Several witnesses testified that Read's power problems began after the transformer fire in March of 1977, and that they ended when SPEPA replaced the transformer in April of 1980. Other evidence was direct: Read testified that when a SPEPA employee finally did check the problem in 1980, he told her, "You've got too much current coming in your house. It's a wonder your house hasn't burned down." There was also testimony that although Read and other family members complained to SPEPA by mail, by telephone and in person, SPEPA did not correct the problem until 1980. From this evidence the jury could fairly infer that SPEPA's conduct fell below the standard of care required of a distributer of electricity.
Read also relied on the doctrine of res ipsa loquitur to prove breach of duty. Res ipsa loquitur, literally translated "the thing speaks for itself," is simply one form of circumstantial evidence. Dees v. Campbell, 183 So.2d 624 (Miss. 1986). The doctrine, which is to be applied cautiously, Phillips v. Hull, No. 55,989 (Miss. Dec. 17, 1986), has three (3) elements:

*920 1) the instrumentality causing the damage must be under the exclusive control of the defendant,
2) the occurrence must be such as in the ordinary course of things would not happen if those in control of the instrumentality used proper care, and
3) the occurrence must not be due to any voluntary act on the part of the plaintiff.
Clark v. Vardaman Mfg. Co., 249 Miss. 42, 162 So.2d 857 (1964); Palmer v. Clarksdale Hospital, 206 Miss. 680, 694, 40 So.2d 582, 584 (1949). Where there is enough evidence to make a jury question on each of these elements, then the jury may, but is not bound to, infer negligence on the part of the defendant, and the plaintiff is entitled to an instruction to that effect. Johnson v. Foster, 202 So.2d 520, 524 (Miss. 1967).
It has been said that where res ipsa is applicable, a presumption of negligence arises requiring the defendant to come forward with an explanation. Palmer, 206 Miss. at 698, 40 So.2d at 586. This statement is true in the sense that the defendant must come forward with an explanation or else take the risk that the jury may infer negligence. The jury, however, is not bound to make the inference. Johnson, 202 So.2d at 524. Indeed, where the plaintiff raises the inference and the defendant puts on no proof, the jury still may reject the inference and return a verdict for the defendant. Id. Thus, evidence of the elements of res ipsa is more properly described as permitting an inference of negligence, rather than raising a presumption of negligence. Id.
We are of the opinion that Read established a prima facie case of breach of duty even without employing res ipsa. Nevertheless, the case was appropriate for application of the doctrine. The evidence indicated that the transformer, which was under SPEPA's control, caused the damages to Read's appliances and wiring. There was no indication that any action on Read's part caused or contributed to the damages. There was a jury question as to whether this damage would not ordinarily occur in the absence of negligence. Therefore, the trial court correctly granted Read's requested instruction on res ipsa.
In attempting to show that the excessive power from the transformer proximately caused the damage to her wiring and appliances, Read relied in part on the evidence that the power problems began after the transformer fire and ended when the transformer was replaced. Moreover, an electrician called by Read as an expert witness testified that, in his opinion, the damage to Read's wiring and appliances was caused by excessive electrical power coming into the residence through the power lines. This was sufficient evidence on which to submit the question of proximate cause to the jury.
SPEPA argues on appeal as it did below that the damages could have been caused by lightening and that the dimming of lights could have been caused by a short in an appliance. The evidence on which SPEPA bases this argument is the testimony, elicited from Read's expert on cross-examination, that lightening and a short were possible causes of the problems Read experienced. SPEPA cites Prosser on Torts for the proposition that where there are several plausible causes of injury, some of which do not involve the defendant's negligence, the plaintiff cannot recover through reliance on res ipsa loquitur. We note, however, this quote from Prosser: "The plaintiff is not required to eliminate with certainty all other possible causes or inferences, which would mean that he must prove a civil case beyond a reasonable doubt. All that is needed is evidence from which reasonable men can say on the whole it is more likely that there was negligence associated with the cause of the event than that there was not." Prosser, Law of Torts § 39 (1971). See, e.g., Kincade v. Doll, 472 So.2d 60 (La. Ct. App. 1985) (doctrine inapplicable where inference that damage was due to another cause is equally reasonable as inference that defendant's negligence was the cause). From the evidence in the case at bar, reasonable jurors could conclude that it was more likely than not that 1) the damages were caused by excessive *921 power flowing from the transformer, and 2) the excessive power flow from the transformer was due to SPEPA's negligence.
Read put on sufficient evidence of her damages, including fair market values of numerous appliances destroyed by the excessive power, and the estimated cost of rewiring her home to replace damaged wires.
Viewing the evidence and the reasonable inferences flowing therefrom all in the light most favorable to Read, we are unable to say that reasonable jurors could not have reached a verdict for Read. Therefore, the trial court erred in granting SPEPA's motion for j.n.o.v.
SPEPA raises three (3) issues on cross-appeal, two (2) of which Read has moved to strike because SPEPA failed to include them in its Cross-Assignment of Errors.

II. WAS READ'S WITNESS GEORGE SPROUSE SIMPLY NOT QUALIFIED TO TESTIFY AS AN EXPERT, AND DID THE TRIAL COURT THEREFORE ERR IN ALLOWING HIM TO TESTIFY AS AN EXPERT?
SPEPA cites no authority for this proposition; therefore, we need not consider it. Burk v. State, 506 So.2d 993 (Miss. 1987); Simpson v. State, 497 So.2d 424 (Miss. 1986); Bonderer v. Robinson, 502 So.2d 314 (Miss. 1986). Moreover, SPEPA did not include this issue in its Cross-Assignment of Errors. Miss.Sup.Ct.R. 6(b). The omission of this issue from the Cross-Assignment of Errors precludes argument of it unless we consider it, at our option, as plain error. In order to invoke this plain error exception to Rule 6(b), at least two (2) justices of this Court must want to consider the issue not assigned. We decline to hear the claim. Adams v. Green, 474 So.2d 577 (Miss. 1985).
Furthermore, we find no merit in SPEPA's argument. The decision as to whether a witness is qualified to state an opinion as an expert is within the sound discretion of the trial court. Detroit Marine Engineering v. McRee, 510 So.2d 462 (Miss. 1987); Boyd v. Lynch, 493 So.2d 1315 (Miss. 1986). In Detroit Marine, we applied our well-established rule regarding expert witnesses: "It is not necessary that one offering to testify as an expert be infallible or possess the highest degree of skill; it is sufficient if that person possesses peculiar knowledge or information regarding the relevant subject matter which is not likely to be possessed by a layman." at 467.
The record indicates that George Sprouse had worked as a licensed electrician for eleven (11) years. He had wired hundreds of houses and had worked on appliances. Considering this testimony, we conclude that the trial court did not abuse its discretion in allowing Sprouse to testify as an expert.

III. DID THE TRIAL COURT ERR IN ALLOWING GEORGE SPROUSE TO TESTIFY AFTER READ FAILED TO DISCLOSE SPROUSE'S NAME AND OTHER REQUESTED INFORMATION DURING DISCOVERY?
Read again points out that the trial court's admission of this testimony was not included in SPEPA's Cross-Assignment of Errors.
Moreover, even if we were to reach this issue, we would find SPEPA's argument to be without merit. On Friday before the case was to be tried on Monday, Read's attorney notified SPEPA's counsel that Sprouse would testify. On the morning of trial, SPEPA objected to the expert's testimony because his name had not been provided in response to SPEPA's interrogatory on expert witnesses. The trial court sustained the objection, holding that the expert could not testify. Miss.R.Civ.P. 37; Jones v. Hatchett, 504 So.2d 198 (Miss. 1987). Because the expert's testimony was essential to proving causation, Read moved for a continuance. Over SPEPA's objection, the trial court granted the motion.
The error which SPEPA alleges is the trial court's allowing this witness to testify. We are of the opinion, however, that the *922 trial court did not err in allowing the testimony. We reach this conclusion because the trial court did not permit the testimony at a time when it would have been a surprise to SPEPA. When SPEPA first objected, the trial court ruled that the expert could not testify. The case was continued until May 8, 1984, almost three (3) months after Read disclosed information about her expert to SPEPA. Only then was the witness allowed to testify. Obviously, SPEPA was not taken by surprise at trial.
Thus, the only ruling of which SPEPA may complain is the granting of Read's motion for a continuance. We discourage trial courts from granting continuances because of discovery violations in civil cases, particularly where the surprised party has gone to some expense and trouble in preparing to try the case on the day it is set. Huff v. Polk, 408 So.2d 1368 (Miss. 1982). Nevertheless, SPEPA cannot show any prejudice. No doubt if Read had been faced with the choice of going to trial without the expert or having her case dismissed with prejudice, she would have chosen the former. Therefore, it is inappropriate for us to reverse and render in favor of SPEPA. To reverse and remand for a new trial because of this error would be a meaningless exercise, since SPEPA on remand would be in precisely the same position as it was when the case was tried; i.e., SPEPA knew about the expert then and would know about him on remand. Because the error, if any, in granting the continuance was harmless, we do not reverse on this point. Fultz v. Doss, 507 So.2d 891 (Miss. 1987); Miss.R.Civ.P. 61.

IV. DID THE TRIAL COURT ERR IN DENYING SPEPA'S MOTIONS FOR ATTORNEY'S FEES?
Read filed a motion requesting that she be allowed to inspect the transformer which SPEPA had removed from the utility pole near her home. SPEPA responded, stating that the transformer had been lost by the company that repaired transformers for SPEPA. In its response SPEPA also objected to the request, claiming that "the period for discovery [had] expired." The trial court then ordered SPEPA to produce the transformer and allow Read to inspect it. SPEPA, asserting that the transformer could not be found, did not produce it. Read then filed a motion for sanctions, seeking an order conclusively adjudicating that the transformer was defective. The trial court denied the motion.
SPEPA submitted to the trial court motions for 1) expenses and attorney's fees incurred in defending against the motion for sanctions, and 2) expenses and attorney's fees incurred in preparing for and obtaining the attendance of expert witnesses for the original trial date, which was continued at Read's request after the testimony of Read's expert was excluded because Read had not provided his name to SPEPA during discovery.
In regard to the request for attorney's fees and expenses incurred in defending against the motion for sanctions, we are of the opinion that Read acted reasonably in seeking sanctions. The sanction which Read sought is provided for in Miss.R.Civ. P. 37(b)(2):
Sanctions by Court in Which Action Is Pending. If a party or an officer, director, or managing agent of a party or a person designated under Rules 30(b)(6) or 31(a) to testify in behalf of a party fails to obey an order to provide or permit discovery, including an order made under subsection (a) of this rule, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
(A) an order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order.
The thrust of SPEPA's argument is that because its failure to comply with discovery was due to inability rather than willful refusal, sanctions were inappropriate. Therefore, SPEPA claims, Read abused the discovery process by seeking *923 sanctions which she knew would not be granted. In so arguing, SPEPA misconstrues our discovery rules. In Kilpatrick v. Mississippi Baptist Medical, 461 So.2d 765, 768 (Miss. 1984) (cited in White v. White, 509 So.2d 205 (Miss. 1987), we held that "[i]f the failure to comply is because of inability to comply, rather than because of willfulness, bad faith, or any fault of the party, the action may not be dismissed, nor a default judgment given, and less severe sanctions are the most that can be invoked." Although failure to comply because of inability does not warrant the most severe sanctions, lesser sanctions may well be appropriate. Therefore, a motion for sanctions against a party unable to comply is not per se an abuse of discovery. In the case at bar, the trial court did not abuse its discretion in failing to award expenses and attorney's fees to SPEPA for defending against the motion for sanctions.
Finally, SPEPA claims the trial court abused its discretion in failing to award SPEPA attorney's fees and expenses, including expenses for expert witnesses, incurred by SPEPA when the trial was continued on Read's motion. Read requested the continuance after the trial court excluded the testimony of her expert, a ruling necessitated by Read's failure to disclose the expert's identity during discovery.
We agree with SPEPA that the trial court abused its discretion in failing to award SPEPA reasonable expenses and attorney's fees incurred in preparing for and attending trial on the date originally set. Because Read withheld the name of her expert witness, the circuit court excluded that witness's testimony. Faced with this appropriate sanction, Read requested a continuance, thus seeking to mitigate the impact of a ruling which she necessitated by her discovery violation. SPEPA was prepared to go to trial on the date originally scheduled, as were its experts. Under these circumstances, the trial court should have awarded SPEPA reasonable expenses and attorney's fees. Although the trial court may not require a monetary payment as a condition for a continuance, Owens v. Whitwell, 481 So.2d 1071 (Miss. 1986), the trial court "may impose upon any party or counsel such sanctions as may be just, including the payment of reasonable expenses and attorney's fees, if any party or counsel... abuses the discovery process in seeking, making or resisting discovery," Miss.R.Civ.P. 37(e). In this case the trial court abused its discretion by failing to award SPEPA reasonable expenses and attorney's fees.
The judgment is reversed, and the cause is remanded for the trial court to reinstate the jury verdict and enter judgment for Read in the amount of the verdict, less 1) the settlement from the manufacturer, and 2) a reasonable amount of expenses and attorney's fees resulting from the continuance, the amount to be determined by the trial court.
REVERSED ON DIRECT APPEAL; REVERSED ON CROSS-APPEAL AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
ROBERTSON, J., concurs in part and dissents in part.
ROBERTSON, Justice, concurring in part, dissenting in part:
Our procedural law affords a litigant unsuccessful before a jury the right to file and have considered a motion for judgment notwithstanding the verdict and, in the alternative, for a new trial. The former motion challenges the legal sufficiency of the evidence; the latter its weight. Where such alternative motions are made, the trial court ordinarily should act upon each. More specifically if the trial court grants the motion for judgment notwithstanding the verdict, it should ordinarily (depending upon the grounds asserted) go ahead and conditionally grant the alternative motion for a new trial. See Rule 50(c), Miss.R. Civ.P.; Maxwell v. Illinois Central Gulf Railroad, 513 So.2d 901, 908 (Miss. 1987); Spradlin v. Smith, 494 So.2d 354, 355-56 (Miss. 1986); Johnson v. City of Pass Christian, 475 So.2d 428, 431-32 (Miss. *924 1985); Larkin v. Perry, 427 So.2d 138, 139 (Miss. 1983).
In the case at bar, Southern Pine Electric Power Association on May 15, 1984, filed a motion entitled Motion For Judgment Notwithstanding the Verdict of the Jury. Paragraphs 13, 14 and 15 of that motion, however, attack the weight of the evidence, not its legal sufficiency. In those three paragraphs Southern Pine argues that the verdict evidences bias, passion and prejudice, is based upon guesswork, suspicion and speculation, and is unreasonably excessive in amount. This language should be construed as an alternative motion for a new trial, notwithstanding counsel's failure to so label such.
On May 15, 1985, the Circuit Court entered its order granting the Southern Pine motion for j.n.o.v. and entering final judgment in favor of Southern Pine notwithstanding the verdict of the jury. The majority opinion reverses that adjudication and I concur.
My concern is that Southern Pine's motion for a new trial has never been ruled upon. For the reasons set forth in my separate opinion in Stubblefield v. Jesco, Inc., 464 So.2d 47, 57-60 (Miss. 1984), I am of the opinion that today's majority is in error when it reverses and renders.
Insofar as the majority opinion holds that the Circuit Court committed error in entering judgment in Southern Pine's favor notwithstanding the verdict of the jury, I concur. Insofar as that opinion reinstates the original judgment entered in Read's favor, following return of the jury verdict, I respectfully dissent. In my view, the case should now be remanded to the Circuit Court for plenary consideration of Southern Pine's motion for a new trial.
NOTES
[1] Res ipsa loquitur (literally, "the thing speaks for itself") is not, like negligence and strict liability, a theory of recovery. It is simply one form of circumstantial evidence. Dees v. Campbell, 183 So.2d 624 (Miss. 1966).