BARNES, J.,
for the Court.
¶ 1. Buster and Dana Townsend filed suit for personal injuries sustained by Buster Townsend when a van he was driving was struck by a trailer that had disengaged from a truck that was being driven by Stanley Skelton who, at the time, was acting within the course and scope of his employment with Thomas Paving, Inc. Following a trial on the merits, a Marshall County Circuit Court jury found in favor of Skelton and Thomas Paving, Inc. The Townsends then filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The motion was denied, and this appeal followed. The Townsends allege error on the part of the circuit court in denying their motion. Finding no reversible error, we affirm.
FACTS
¶ 2. Stanley Skelton testified at trial that on the morning of September 26, 2000, he hooked a trailer to his pickup truck in the same manner that he had done on previous occasions and left his employer’s place of business in Holly Springs, Mississippi bound for Memphis, Tennessee. His job assignment that day called for him to travel to Memphis to retrieve a load of steel tubing and deliver it to his employer’s shop in Holly Springs. On his return trip, while traveling east on 1-240, another driver “whipped” in front of his vehicle, and Skelton applied his brakes to avoid a collision. When he put his foot back on the accelerator he felt the trailer break loose from the rear of his truck. The trailer crossed the median of 1-240 and struck Buster Townsend’s west-bound van.
¶ 3. Mr. Townsend testified that as he was driving west on 1-240 on the morning of September 26, he looked to his left and saw the trailer headed directly toward him. Upon impact, his van flipped and landed on its roof in the median of the highway. Mr. Townsend was rendered unconscious following the collision and sustained severe injuries.
¶ 4. The jury returned a verdict in favor of Skelton and his employer, Thomas Paving, Inc., and the Townsends filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The motion was denied. The Townsends argue that the denial of their motion constitutes reversible error.
ANALYSIS

1. Motion for judgment notwithstanding the verdict

¶ 5. The Townsends argue that the evidence at trial did not support the verdict reached by the jury, but that, to the contrary, the evidence clearly indicated that Skelton did something while driving that caused the trailer to break free. They say that common sense dictates that trailers do not just break free of trucks in the absence of some form of negligence, either in “hooking the trailer to the truck, or in driving the truck.” The Townsends further argue that there was no evidence presented at trial supporting a verdict of no liability; therefore, in failing to find Skelton and Thomas Paving liable for Mr. Townsend’s injuries, the jury ignored the evidence before it. For these reasons, they conclude, the motion for judgment notwithstanding the verdict should have been granted.
¶ 6. This Court’s standard of review on motions for judgment notwithstanding the verdict requires that the evidence be considered in the light most favorable to the appellee, giving that party the benefit of all favorable inferences that may reasonably be drawn from the evidence. Buskirk v. Elliott, 856 So.2d 255, 266(¶ 29) (Miss.2003). When so considered, if the facts point so overwhelmingly in favor of *641 the appellant that reasonable men could not have arrived at a contrary verdict, this Court is required to reverse and render. Id. If, however, there is evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required, provided that the trial judge applied the correct law. Id.
¶ 7. The jury was given the following instruction on res ipsa loquitur:
INSTRUCTION NO. P-12B
The Court instructs the jury that under certain circumstances an accident speaks for itself and the jury is permitted to infer the existence of negligence. In such cases, the plaintiffs need not allege or prove the particular act of negligence itself which caused the injury but the burden is on the Defendants to show an absence of negligence.
The conditions which must occur before the jury may infer negligence has arisen are as follows:
1. The event must be one that would not normally occur absent someone’s negligence;
2. The event must be caused by an agent or instrumentality within the Defendant’s exclusive control; and
3. The Plaintiffs must not have voluntarily contributed to the event.
When these conditions are met, the jury may infer negligence but is not compelled to do so.
Accordingly, if you find from a preponderance of the evidence that the above factors are present then you may infer negligence in this case. If you further find that the Defendant has not met its burden to show an absence of negligence and that the negligence proximately caused injury to the Plaintiffs, then you may find for the Plaintiffs.
(Emphasis added).
¶ 8. We find that the jury instruction was correct as to its recitation of the elements of res ipsa loquitur. See Powell v. Methodist Health Care-Jackson Hospitals, 876 So.2d 347, 349(¶ 7) (Miss.2004). However, the instruction wrongly stated that the burden was on the defendants to show an absence of negligence. See Read v. Southern Pine Elec. Power Assn., 515 So.2d 916, 920 (Miss.1987). We assume that because this misstatement benefitted the Townsends, the issue was not raised on appeal. We address this issue in more detail below.
¶ 9. The only evidence at trial regarding Skelton’s hitching of the trailer to the truck and his driving at the time of the accident came from the testimony of Skel-ton. He testified that he connected the trailer to the truck using a two-inch ball, as required by the type of trailer involved, and a hitch secured by two safety chains. In response to questioning by his counsel as to the procedures he followed to secure the hitch to the ball, Skelton explained:
A: You know, this particular hitch, you just — when it comes down on the ball, it has [a] plate that comes over and latches it, and then you have — I just always just, you know, check up and down good, pick it up, make sure it’s locked and then check the safety chains.
Q: Where do the chains run from on the trailer?
A: They run from behind the hitch and actually bolted on there, and they come down each side and bolt, and it’s got hooks, a)on them, and you hook them to the outside of the bumper.
*642 Q: And do you recall specifically going through that process on that day of this accident?
A: Yes, sir.
Q: How many — how many safety chains were there?
A: Two.
Q: And do you recall the condition of the safety chains?
A: They looked fine to me. Wasn’t no cuts on them.
Q: And do you specifically recall hooking the chains to the truck that day?
A: Ido.
¶ 10. On adverse examination, Skelton testified:
Q: Now, when we — when we took your deposition, you didn’t really recall whether this trailer had a screw-down type latch or a spring type, did you?
A: I don’t guess.
Q: Okay, but you recall today or do you—
A: Well, maybe I — I went and looked at the old trailer before — after you talked to me, you know, maybe just wondering. You know, I don’t really remember. It seems to me like it had a lock-down latch on and had a pin in it.
Q: All right. Did you go and check before you came to testify here today?
A: No. The trailer — it’s been destroyed and tore up so bad it was just — I think it was sold for scrap iron.
Q: This accident happened September 26, 2000. I took your deposition July 31, 2002. That trailer was long since destroyed by that time, wasn’t it?
A: No.
Q: You don’t know?
A: No. It wouldn’t have been destroyed. We haul off a lot of scrap iron once we have a buildup out there.
Q: That’s all right. I don’t want to be argumentative. I’m just asking-—
A: Like I said, I’m pretty sure it was a — one that locks down.
Q: One of the spring types
A: Yeah. Pretty sure.
Q: All right, and are you sure that it had a pin or did ... it pop off?
A: If it required a pin, it had one.
Q: Okay, but you will agree with me if you don’t put a pin in those things, it can just pop up, can’t they?
A: Well, I guess. It was still locked down when it was at the scene of the accident.
Q: So you looked?
A: Yeah. The officer looked. He looked at the chains, also.
Q: The chains were broken; right?
A: Right. That’s what he said, you know, it broke the chains. You could see the broken chains. The chain was still on it and—
Q: And the spring latch was still down even though the trailer was somewhere in the opposite lane of traffic?
A: Yes, sir. It was still there.
¶ 11. When questioned by his counsel concerning his driving at the time the trailer disengaged, Skelton testified:
Q: Getting up close to the time of the accident, what was — was the traffic like coming down 1-240?
A: Coming down 240, it was — it was fine up to the time I got close to Lamar. When I got to the Lamar exit, the traffic was starting to back up, and it was kind of like a hill there when you get to that exit kind *643 of looking down. It was starting to back up. You could see it was congested down there or something.
Q: How fast were you driving?
A: I was going about forty-five — between forty-five, fifty, somewhere in that area.
Q: Tell us, if you will, how the accident happened.
A: As I said, I was — I’m looking at the traffic and this car from the left lane was coming over in front of me, coming in the center lane, whipped over in front of me and slammed on his brakes. When he did, I hit my brakes momentarily, and I felt the pop, and I looked in the mirror, and I could see the trailer veering off to the side, and that lane was already clear. The fellow behind me was stopped. So, I went to the outside lane — the inside lane immediately and stopped, and the trailer was kind of going at a[sic] angle and went up an embankment, crossed three lanes.
¶ 12. As Skelton’s testimony was the only evidence presented by either side on this question, the jury’s verdict shows that the panel was convinced that the defense met its burden to show an absence of negligence. However, the jury could have reached the same conclusion in the absence of any evidence whatsoever put forth by either defendant. Read, 515 So.2d at 920. The Read court explained the doctrine of res ipsa loquitur:
Where there is enough evidence to make a jury question on each of these elements, then the jury may, but is not bound to, infer negligence on the part of the defendant, and the plaintiff is entitled to an instruction to that effect.
It has been said that where res ipsa is applicable, a presumption of negligence arises requiring the defendant to come forward with an explanation. This statement is true in the sense that the defendant must come forward with an explanation or else take the risk that the jury may infer negligence. The jury, however, is not bound to make the inference. Indeed, where the plaintiff raises the inference and the defendant puts on no proof, the jury still may reject the inference and return a verdict for the defendant. Thus, evidence of the elements of res ipsa is more properly described as permitting an inference of negligence, rather than raising a presumption of negligence.
Id. (internal citations omitted).
¶ 13. In challenging the lower court’s denial of their motion for judgment notwithstanding the verdict, the Town-sends misconstrue the doctrine of res ipsa loquitur as providing a conclusive presumption of negligence. The Townsends’s brief states that when the res ipsa loquitur elements were established, “the burden shifted to Defendants to show an absence of negligence.” This is a mischaracterization of the doctrine. As the supreme court so clearly stated in Read, meeting the elements of res ipsa loquitur merely allows the jury to infer negligence; it does not require such an inference or a finding of negligence, nor does it shift the burden of proof. The jury in this case was not convinced by the proof put forth by the plaintiffs, and we cannot overturn the verdict on the facts before us.
¶ 14. Considering the evidence in the light most favorable to the appellees, giving them the benefit of all favorable inferences that may reasonably be drawn from the evidence, we do not find that the facts point so overwhelmingly in favor of the Townsends that reasonable men could not have arrived at a contrary verdict, requiring that we reverse and render. See Bus- *644 kirk, 856 So.2d at 266 (¶ 29). What this Court does find is evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, and that affirmance is required. See id.

2. Motion for new trial

¶ 15. In support of their allegation that it was error for the trial court to deny their motion for a new trial, the Town-sends allege that the jury verdict is so shocking to the conscience that it evidences bias and prejudice on the part of the jury. They further claim that there was no evidence set forth by Skelton and Thomas Paving that could establish under “any imaginable set of facts that ... Stanley Skelton did not act negligently in some way when hitching the trailer to the truck or in driving his truck so as to cause the trailer to unhitch and hit and injure ... Buster Townsend.”
¶ 16. This Court’s standard of review on motions for new trial is well settled. A motion for a new trial challenges the weight of the evidence, and Mississippi appellate courts will only reverse a lower court’s denial of a motion for a new trial if, in so doing, the lower court abused its discretion. Also, no new trial will be ordered unless the appellate court is convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. Whitten v. Cox, 799 So.2d 1, 13(¶ 26) (Miss.2000) (citing Sheffield v. State, 749 So.2d 123, 127(¶ 16) (Miss.1999)).
¶ 17. In the case at bar, this Court does not find that the lower court abused its discretion in denying the motion for new trial. The record is clear that the lower court adequately instructed the jury on the law as it applied to this case; in particular, the res ipsa loquitur instruction properly allowed the jury to infer negligence from the circumstances surrounding the accident. It appears that the jury accepted the testimony of Skelton regarding the hitching of the trailer to the pickup truck and his actions while driving when the trailer became disengaged and found that there was no negligence involved on his part. This Court is not convinced that the jury’s finding in this regard is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice.
¶ 18. THE JUDGMENT OF THE MARSHALL COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR.