968 So.2d 492 (2006)
Jackie TENTONI, Individually, and As Next Friend on Behalf of Her Minor Children, Melanie Tentoni, Johnathan Tentoni and Phillip Tentoni, Appellant
v.
Warren W. SLAYDEN, Appellee.
No. 2005-CA-00529-COA.
Court of Appeals of Mississippi.
December 12, 2006.
Rehearing Denied April 24, 2007.
*493 Joseph S. Gatlin, III, attorney for appellant.
Shelly G. Burns, attorney for appellee.
EN BANC.
GRIFFIS, J., for the Court.
¶ 1. Jackie Tentoni, individually and on behalf of her minor children Melanie, Johnathan, and Phillip, filed suit against Warren "Wynn" Slayden in the Circuit Court of Madison County for personal injuries arising from a car accident. The jury found for Slayden. Jackie appeals and argue (1) she was entitled to a peremptory instruction on liability, and (2) the verdict is against the overwhelming weight of the evidence and is a product of passion, prejudice, or bias. We reverse and render as to liability, and we remand for a new trial on damages.

FACTS
¶ 2. On January 1, 1999, Jackie was operating her sports utility vehicle in the right, southbound lane on Interstate 55 in Carroll County. Melanie was in the front passenger seat, Phillip was in the back middle passenger seat, and Johnathan was lying down in the cargo area. Slayden was operating his vehicle in the left, southbound lane. It was raining, and the road was wet. Slayden was traveling about sixty-eight miles per hour, and had overtaken the eighteen-wheeler that was traveling behind Jackie.
¶ 3. Slayden's vehicle hydroplaned when it ran over standing water. The Slayden vehicle went over into the right lane, striking Jackie's vehicle's left front bumper with its right front bumper. Slayden's vehicle then spun around, hitting Jackie's vehicle's right rear bumper. This second impact knocked Jackie's vehicle off the right side of the Interstate. Jackie's vehicle ran over fallen logs, small trees, and was stopped when it slammed into a tree. The second impact also caused Slayden's vehicle to run off the left side of the Interstate, coming to rest in the median.

STANDARD OF REVIEW
¶ 4. We review issues of law de novo. Russell v. Performance Toyota, Inc., 826 So.2d 719, 721(¶ 5) (Miss.2002). When reviewing the denial of a directed verdict, we consider the evidence in the light most favorable to the appellee. Harrah's Vicksburg Corp. v. Pennebaker, 812 So.2d 163, 170(¶ 28) (Miss.2002). If the facts are so overwhelmingly in favor of the appellant that a reasonable juror could not have arrived at a contrary verdict, this Court must reverse and render. Id. On the other hand, if substantial evidence exists in support of the verdict, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, then this Court must affirm. Id.

ANALYSIS
I. Was Jackie entitled to a peremptory instruction on liability?
¶ 5. Jackie argues she was entitled to a peremptory instruction on liability, because Slayden was negligent per se, and he admitted causation and certain damages. Slayden does not dispute causation and the damages admitted at trial. Rather, *494 he maintains that negligence was a jury question.
¶ 6. In Barkley v. Miller Transporters, Inc., 450 So.2d 416, 419 (Miss.1984), the supreme court affirmed a peremptory instruction on negligence when an eighteen-wheeler hydroplaned while attempting to pass another driver. The defendant driver Hiram Roberts admitted that it was raining and the roads were wet. Id. He admitted knowing of the danger that wet roads pose. Id. He admitted that he lost control of his truck. Id. The court held that Roberts had a duty of care while passing other vehicles under Mississippi Code Annotated Sections 63-3-609 and 63-3-611. Id. The court further held:
it is the duty of every driver to "see that which is in plain view, open, and apparent; to take notice of an obvious danger; and to be on the alert so as to avoid a collision with objects, vehicles, and others using the highway. Moreover, it is the duty of the driver of an automobile to take reasonably proper steps to avoid an accident or injury to persons or property after having knowledge of the danger."
Id. at 419-20 (quoting Shideler v. Taylor, 292 So.2d 155, 156-57 (Miss.1974)). Because Roberts "ignored the danger he knew lay ahead, and as a result lost control of his truck" the peremptory instruction on negligence was appropriate. Id. at 420.
¶ 7. Barkley instructs our decision. Slayden admitted that it was raining and the road was wet. He admitted that he was aware of the dangers of hydroplaning. Nevertheless, he testified that he did not slow down. He maintained a speed near the posted speed limit. He admitted that he lost control of his vehicle when his car hit a patch of standing water. He ignored the danger and as a result lost control of his car. This testimony went undisputed. We find that Jackie was entitled to a peremptory instruction on negligence. Additionally, since Slayden admitted causation, Jackie was entitled to a directed verdict on liability.
¶ 8. Nevertheless, Slayden points to Shields v. Easterling, 676 So.2d 293, 295 (Miss.1996), in which the court denied a peremptory negligence instruction. That case involved a one vehicle accident in which a truck skidded over a patch of ice. Id. at 294. C.W. Easterling was driving a truck in which Flora Shields was a passenger. Id. It was dark outside, there was no precipitation, and the temperature was below freezing. Id. As the truck passed over the first bridge, it hit a patch of ice, and began to slip. Id. Easterling managed to regain control of the truck without incident. Id. He then slowed down his speed to forty-five miles per hour. Id. Ten to fifteen miles down the road, the truck passed over a second bridge, where it hit another patch of ice. Id. This time the truck fishtailed, and the trailer it was hauling jackknifed and flipped the truck. Id. The court denied the peremptory negligence instruction, because there was a jury question as to whether Easterling's speed caused the accident. Id. at 295. The court also rejected Shields's contention that "where an accident occurs involving no other vehicle, the driver . . . is liable as a matter of law." Id.
¶ 9. Shields is readily distinguishable. Easterling recognized that the bridges were icing over and took precautionary measures. Since he had a minor incident, he slowed down. It was a jury question as to whether it was reasonable for him to foresee that he would nevertheless have a major incident at the slower speed he chose. In the case sub judice, however, Slayden recognized the danger but did not slow his speed.
*495 ¶ 10. Therefore, we reverse and render as to liability. We remand for a new trial to assess the proper damages.
II. Was the verdict against the overwhelming weight of the evidence or the product of bias, passion and prejudice?
¶ 11. Jackie raised an alternative argument. We address this issue, because it will be instructive on remand. Jackie argues that the verdict was the product of bias, passion and prejudice. As evidence, she points to the defense counsel's appeal for sympathy for Slayden and vilification of Jackie. Slayden argues that there was no objection to counsel's comments, and they did not influence the jury.
¶ 12. During closing argument, Slayden's attorney stated:
But here's the problem and here's why. This has been going for Wynn Slayden and Brenda Slayden for six years. For six years, he has been carrying this burden and all the uncertainty and insecurity and stress that has been going along with this. He's survived two heart attacks. And he's sitting there with Nitroglycerine in his pocket right now.
. . . .
Wynn Slayden has been the object of [Jackie's] fixation and her obsession for six years. We ask that you return a verdict in his favor today and set him free from that at long last.
¶ 13. An attorney is afforded wide latitude in closing arguments, so long as she keeps fairly within the evidence. Eckman v. Moore, 876 So.2d 975, 986(¶ 38) (Miss.2004). When she "departs entirely from the evidence . . . or makes statements intended solely to excite the passions or prejudices of the jury, or makes inflammatory and damaging statements of fact not found in the evidence, the trial judge should intervene to prevent an unfair trial." Id. (quoting Clemons v. State, 320 So.2d 368, 371 (Miss.1975)). "Appeals to passion or prejudice are always improper and should never be allowed." Id. at 987(¶ 40). Furthermore, a jury's verdict may not be the product of sympathy. Forbes v. State, 771 So.2d 942, 949(¶ 18) (Miss.Ct.App.2000).
¶ 14. At the hearing on the motion for new trial, Slayden's attorney admitted that the comments were irrelevant to the issue of liability. We agree. These statements were neither relevant nor based on the evidence. It is possible that the statements were made inadvertently and in the heat of the moment of closing argument. However, on their face, this statement appears to be intended to ignite the jury's passions in favor of Slayden and against the Tentonis-Jackie, in particular. On remand, Slayden's counsel is instructed not to repeat this conduct.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY IS HEREBY REVERSED AND RENDERED AS TO LIABILITY AND REMANDED FOR A NEW TRIAL ON DAMAGES. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE and MYERS, P.JJ., IRVING, CHANDLER, ISHEE AND ROBERTS, JJ., CONCUR. SOUTHWICK, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BARNES, J.
SOUTHWICK, J., Dissenting:
¶ 16. The majority reverses the judgment entered on the jury's verdict that the defendant was not negligent in the manner that he was driving. Liability is imposed as a matter of law, and the cause is remanded for further proceedings on damages. The majority's believing that this *496 defendant was negligent is reasonable based on the evidence. Yet I disagree that such a finding was legally mandated. Instead, the trial court properly instructed and entrusted the jurors about negligence. Since I would affirm, I respectfully dissent.
¶ 17. This accident occurred during rainy conditions. Testimony describing the precise weather at the time of the accident is scarce, and particularly whether the rain was especially heavy at the time of the accident. The responding officer testified that it was raining and that it is not unusual for cars to hydroplane on this interstate highway in heavy rain. The plaintiff testified that after passing the tractor-trailer, she "felt water on the road, put [her] vehicle in extra traction" mode, and reduced her speed. The defendant testified that he was traveling sixty-eight miles per hour in a seventy mile per hour zone. He said it was raining, but he did not notice puddles on the highway as he passed the tractor-trailer. There was, though, enough water on the road or falling as rain that the tractor-trailer was "blowing water all over the top" of his car. The plaintiff's vehicle also created a spray.
¶ 18. There was some evidence that only after the defendant had passed the tractor-trailer, the plaintiff had moved back into the right-hand lane, and both parties' vehicles had gone over the crest of a hill, was there a large amount of water on the road. Not long after the parties started their descent on the hill, the hydroplaning began.
¶ 19. The defendant testified that he was "driving at what [he] thought was a safe rate of speed." The speed he maintained was slightly less than the speed limit. He allegedly had been driving at that same speed for miles and did not think he needed to slow down further because of the weather. The majority refers to an admission that the defendant was aware that hydroplaning was a danger during rain. However, most drivers would be aware that hydroplaning is both a possibility and a dangerous one during heavy rain. The question the jurors faced was not whether it was a possibility, but whether he was complying with his duty "to take reasonably proper steps to avoid an accident or injury . . . after having knowledge of the danger." Barkley v. Miller Transporters, Inc., 450 So.2d 416, 420 (Miss. 1984). The majority finds Barkley compelling in its reasons for reversing, so I examine the facts of that case closely.
¶ 20. The Supreme Court described the Barkley accident this way:
On September 17, 1979, Jeanne Barkley was proceeding east down two-lane highway 98 from McComb to Columbia. She was being followed by appellee Hiram Roberts, Jr., driving an 18-wheel tractor-trailer rig owned by appellee Miller Transporters, Inc. It had been raining that day and the road was wet. This particular stretch had also been recently asphalted. Just prior to arriving at the long straightaway on which the accident happened, both Barkley and Roberts passed a road sign which cautioned them that the upcoming stretch of road was slippery when wet. As they reached the straightaway, Roberts pulled into the west lane in order to pass Barkley. Before Roberts had completed his passing effort, he lost control of his truck. Seeing this, Barkley, without applying her brakes, drove her vehicle off the road at forty miles per hour.
Id. at 417. The opinion does not refer to the speed limit on the highway, which implies that the court did not find the legal limit important. The following additional facts were gleaned from a review of the Barkley record. The speed limit at the location of the accident was not mentioned *497 in the record or in the briefs that I could discover. Thus, whether the court would have found it important, there was nothing on which the court could rely. The plaintiff Barkley was traveling at about forty-five miles per hour when Roberts, the driver of a tractor-trailer, began to pass her and lost control. Barkley took her foot off the accelerator and slowed to about forty miles per hour prior to her vehicle going off of the road. Roberts was traveling between forty-five and fifty miles per hour while attempting to pass Barkley. The two were driving on a stretch of road approaching an asphalt plant. One of the signs the drivers passed while approaching the plant said "Slippery When Wet." The responding state trooper testified that the road had recently been resurfaced in that location and was a common spot for accidents. The record as well as the Supreme Court opinion indicate that it was the slippery and wet new asphalt near the entrance to the plant, a condition for which a warning sign had been placed and seen by the defendant, that caused the defendant to lose control.
¶ 21. The Barkley court decided that it was justified to give a peremptory instruction that the defendant Roberts was negligent:
Appellee Roberts testified that on the day of the accident it was raining and the road was wet. He admitted knowing that oil rises to the surface of wet asphalt and admitted seeing the road sign that said "slippery when wet." He further stated that, while passing, he lost control of his truck.
Mississippi Code Annotated § 63-3-609 (1972) provides that "the driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle." (Emphasis added). Also, Mississippi Code Annotated § 63-3-611 (1972) provides that upon overtaking a car in such a manner passing must be effectuated in such a way as to be made completely "without interfering with the safe operation of . . . any vehicle overtaken." These statutes imposed upon appellee Roberts a duty of care in passing appellant. It is the duty of every driver to "see that which is in plain view, open, and apparent; to take notice of an obvious danger; and to be on the alert so as to avoid a collision with objects, vehicles, and others using the highway. Moreover, it is the duty of the driver of an automobile to take reasonably proper steps to avoid an accident or injury to persons or property after having knowledge of the danger." Shideler v. Taylor, 292 So.2d 155, 156-157 (Miss. 1974). Appellee Roberts ignored the danger he knew lay ahead, and as a result lost control of his truck. The granting of the peremptory instruction was not error.
Barkley, 450 So.2d at 419-20. As does the majority, I seek in this precedent some standard that may be applied in later cases such as the one before us today.
¶ 22. To find the standard, I note that both in Barkley and here the only possible negligence arises from the defendants' speed. True, in each case the defendant was passing another vehicle. However, the collisions resulted from losing control when hazardous road conditions were encountered, conditions which would not have caused any problem had the defendants been at sufficiently slower speeds. Different labels might be placed on the act of negligence  not maintaining control, not maintaining travel in the correct lane  but by whatever label, the foundation of possible negligence was driving too fast. There is tension between the general rule that the jury determines whether a defendant *498 was negligent in light of the circumstances, and a finding that a driver, without stating a relation to any speed limit, was as a matter of law negligently driving too fast. The statutes used in Barkley have never been held to create strict liability for losing control of a vehicle. Since the defendant in Barkley was driving too fast as a matter of law, I am left with trying to glean from the court's opinion a standard by which a defendant's speed may be measured for negligence.
¶ 23. To understand Barkley better, I examine the ways in which the Supreme Court has interpreted its own decision. No Supreme Court opinion in the over-twenty years since Barkley was decided applied it to find that someone was negligent as a matter of law. In explaining why liability in a particular automobile accident was a fact question, Barkley was distinguished by explaining that the "evidence showed that the truck driver had been alerted to the slippery road and, as a result of his failure to exercise care in passing Barkley, lost control of his truck." Twin County Elec. Power Ass'n v. McKenzie, 823 So.2d 464, 471 (Miss.2002). My review of the Barkley record, as explained above, confirms that the principal basis for liability was the warning sign about slippery conditions around the entrance to the asphalt plant when the roadway was wet. The defendant admitted he knew that fresh asphalt was dangerously slippery when wet, and the plant entrance had an obvious build-up of fresh asphalt.
¶ 24. I find only two other cases that cite Barkley in situations comparable to those in this appeal. In one, the court reversed, finding a close question on whether a directed verdict in favor of liability should have been entered. Dennis v. Bolden, 606 So.2d 111, 114 (Miss.1992). The court said that even though one duty of a driver was to be alert on the highway and avoid hitting what was plainly in view, that defendant's striking of a child did not mandate a finding of liability since there was some offsetting evidence on whether the child could have been seen in time. Id. Another precedent involved whether an insurance policy covered a particular incident, but the court quoted Barkley to say it was a driver's duty "to take reasonably proper steps to avoid an accident or injury . . . after having knowledge of the danger." Papa v. Miss. Farm Bureau Cas. Ins. Co., 573 So.2d 761, 763 (Miss.1990) (quoting Barkley, 450 So.2d at 420).
¶ 25. Occasionally Barkley has been cited in a dissenting opinion after a majority of the court held that the question of liability was for the jury to decide. Upchurch v. Rotenberry, 761 So.2d 199, 208 (Miss. 2000) (McRae, J., dissenting) (driver must take reasonable steps to avoid an accident once becoming aware of danger). The Barkley decision also has been cited on other issues, such as about uninsured motorist coverage. Mitchell v. United Servs. Auto. Ass'n, 831 So.2d 1144, 1154 (Miss. 2002); Massachusetts Bay Ins. Co. v. Joyner, 763 So.2d 877, 883 (Miss.2000).
¶ 26. My interpretation is that Barkley very much is limited to its facts, in part because there is so little from which the measure of neglected care can be discerned. Regardless of the speed limit on that highway segment, the Barkley court held that the combination of the warning sign of "slippery when wet," the rain, and the obviously slick new asphalt, meant that the defendant was negligent. Perhaps there was even a component that regardless of the posted speed limit, the defendant's driving close to fifty miles per hour in those conditions was irrefutably negligent. Seeing the wet asphalt and also having been otherwise warned, the defendant needed to slow more. Thus Barkley may best be viewed as a case of a specific, *499 obvious and limited hazard encountered during travel on the highway, and the need to respond non-negligently to that hazard.
¶ 27. Our case concerns something rather different. The hazard was not a patch of wet and freshly laid asphalt that the parties suddenly but with notice came upon, but was the general weather conditions that had applied to travel for some length of time. To the extent Barkley may in part have allowed the defendant's losing control to speak for itself as to whether he drove onto the wet and fresh asphalt with due care, the lengthy period of time the drivers in our case had proceeded without difficulty is certainly a distinction.
¶ 28. I apply Barkley to the instruction given the jury in the present case on the standard of care, an instruction to which no objection is made on appeal:
The Court instructs the jury that the law . . . requires a driver of a motor vehicle to drive at a reasonable rate of speed for the conditions then and there existing; to keep and maintain a proper lookout for other vehicles using the roadway; and to maintain his or her vehicle under free and reasonable control and to drive in his lane of travel and not to change lanes until and unless he can do so safely. . . .
¶ 29. The key is that the agreed standard for the jury's use was one of reasonableness. What was reasonable in the circumstances, and those factual circumstances were explained as well as the parties could, might still lead to an accident.
¶ 30. The majority must be relying on one of three possibilities when it rejects any fact issue:
(1) The defendant may have been negligent per se. Negligence per se depends on violation of a statutory or other relevant standard. Thomas v. McDonald, 667 So.2d 594, 596 (Miss.1995). The defendant was not exceeding the speed limit nor did he violate any other traffic rule while under control of his vehicle. It is true that he lost control of his vehicle. However, loss of control may be caused both by avoidable and unavoidable reasons, which is a way of saying the loss of control may be negligent or non-negligent. Negligence per se is legally inapplicable.
(2) Similarly, the majority may be saying that the facts of this incident are uncontested and that undisputed evidence supports only one result. In such a view, the acts of potential negligence would so clearly fall short of what a reasonable driver would have done that no juror could conclude that liability should not be imposed. The difference between this viewpoint and negligence per se is that no identifiable statutory or regulatory standard would need to be violated.
¶ 31. The factual issue was whether he was driving too fast for the conditions. The jury said "no." Before the jury's answer can be found beyond its discretion, we must perform this review:
all evidence with reasonable inferences flowing therefrom must be accepted as true in favor of the party against whom the peremptory instruction is requested, all evidence in conflict therewith is disregarded, and, if such evidence is sufficient to support a verdict for the party against whom the peremptory instruction is requested, then it should be denied.
Downtown Grill, Inc. v. Connell, 721 So.2d 1113, 1123-24 (Miss.1998) (quoting Edwards v. Patrick, 469 So.2d 92, 95 (Miss. 1985)) (quoting Barkley, 450 So.2d at 419).
¶ 32. I will admit that on this bare appellate record, I would likely as a juror have found negligence. My appellate judicial duty is to determine, though, whether it was beyond the jury's prerogatives not to find negligence. I believe the jurors could have concluded that even though the *500 defendant was proceeding on the high end of a safe speed, he was not negligent based on the conditions before he topped the hill. There was evidence that his speed was almost identical to that of the plaintiff, as he testified that he had been following close behind her for miles. Further, once both parties went over the hill, the hazards of puddles that were then encountered might have been found not reasonably anticipatable in light of the conditions until that time. For analytical purposes, we could hypothesize one change to the events in this case: what the parties could see only as they topped the hill and started down was a tree that had fallen across the roadway. One driver then hit the tree before he could do anything else, and was forced by the tree into contact with another vehicle as occurred here due to the hydroplaning. Whether a driver should have better anticipated the chances of a tree having been knocked down across the road in a storm would be an issue for the jury.
¶ 33. Negligence is not usually presumed. I find that the undisputed evidence does not compel a finding that Slayden was driving too fast. Jurors may have decided that the evidence did not sufficiently prove that the new condition that suddenly led to injury after all the drivers had been proceeding for so many miles without difficulty, was one which the defendant should have been better prepared to face.
(3) Finally, the majority may be implying that this is an occasion for the application of res ipsa loquitor, i.e., "the thing speaks for itself." Read v. Southern Pine Elec. Power Ass'n, 515 So.2d 916, 919 (Miss.1987). I do not find that allowing the vehicle to hydroplane "speaks for itself" when considering negligence. Most fundamentally, "the instrumentality causing the damage must be under the exclusive control of the defendant," which is one of three elements of the doctrine. Id. at 920. The road and weather conditions were not under the defendant's sole control. Implicit in the majority's view, though, is that they see the case as loosely controlled by another element of res ipsa loquitor: "the occurrence must be such as in the ordinary course of things would not happen if those in control of the instrumentality used proper care. . . ." Id. Since there is no evidence that the plaintiff was negligent, then surely the defendant must have been. However, "proper care" is the fact issue that I find was for the jury, and which was resolved in favor of the defendant.
¶ 34. The res ipsa loquitor doctrine is not often invoked, but its presence may be felt in some cases all the same. In the very first year of this intermediate court's existence, our chief judge reviewed the doctrine at some length in an opinion that he later identified as one of his two most significant ones that year; he accurately noted that under Mississippi practice the doctrine creates only an inference and not a conclusive presumption. Southwick, Mississippi Court of Appeals: History, Procedures, and First Year's Jurisprudence, 65 MISS. L.J. 593, 631-32 (1996) (citing Byars v. Wal-Mart Stores, Inc., 669 So.2d 786 (Miss.Ct.App.1995) (mem., not binding precedent) (Fraiser, C.J., concurring)). The Byars majority had not discussed the doctrine, but a dissent found it to be controlling. Byars, 669 So.2d 786 (Payne.J., dissenting). The majority in our case also does not cite this doctrine, but as a dissenter I sense its brooding and intrusive presence all the same.
¶ 35. I would affirm.
BARNES, J., JOINS THIS OPINION.